STATE of Minnesota, Respondent,

v.

Pedro Maldono RODRIGUEZ,
Jr., Appellant.

No. A06–974.

Supreme Court of Minnesota.

Aug. 21, 2008.

Lori Swanson, Attorney General, St. Paul, MN, Scott A. Buhler, Assistant Polk County Attorney, Crookston, MN, for respondent.

Lawrence Hammerling, Chief State Appellate Public Defender, Davi Elstan Forte Axelson, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Pedro Maldono Rodriguez, Jr., pleaded guilty to a number of drug-related offenses, including conspiracy to commit controlled substance crime. On appeal, appellant asks us to reverse his sentence and remand for resentencing on the grounds that the district court erred in concluding that the Confrontation Clause and Minnesota Rules of Evidence do not apply in jury sentencing trials, that the district court declined to provide the sentencing jury an accomplice corroboration instruction, and that the district court's upward sentencing departure on the basis of appellant's possession of a handgun was invalid. We affirm appellant's sentence.

On March 4, 2004, the Crookston Police Department learned from the Drug Task Force that appellant and A.W., appellant's stepdaughter, were traveling from Texas to Crookston in a Ford Explorer with a large amount of cocaine and a handgun. In the early morning hours of March 5, a Crookston police officer observed the vehicle entering Crookston from the south on Highway 75 and followed the vehicle to Glen McGee's residence on the south side of town. The officer observed McGee leave the vehicle carrying a small duffel bag with a jacket draped over it. After dropping McGee off at his residence, appellant and A.W. were pulled over on West Sixth Street in Crookston. A drug detection dog alerted to the presence or close association of controlled substances in the interior and exterior of the vehicle, and appellant was arrested.

Polk County Deputy Sheriff Randy Sondrol bypassed the traffic stop and met Deputy Brad Johnson near McGee's residence. Sondrol and Johnson spoke with McGee, who explained that he had traveled to Texas with appellant and A.W. When the officers told McGee that they had information that he had transported cocaine from Texas, McGee retrieved a bag containing 60 smaller baggies of cocaine from his bedroom closet. (Sondrol later submitted the cocaine to the Minnesota Bureau of Criminal Apprehension Laboratory, which detected 88.6 grams of cocaine in the 15 baggies it analyzed.) McGee also showed the officers where a .45 semi-automatic handgun, ammunition, and empty magazines were hidden in his bedroom, and the officers found a Hershey's syrup jug, which had been glued shut and cut below the spout, in McGee's kitchen.

After being advised of and waiving his rights, McGee admitted to the officers that he, appellant, and A.W. had traveled to Big Wells, Texas, with the intention of purchasing drugs for resale. McGee explained that he gave appellant $12,000 to purchase the drugs when they were in Texas and that appellant returned about 9 hours later with the sealed Hershey's jug

containing cocaine. McGee said that although A.W. accompanied him and appellant on the trip, he did not think that A.W. knew about the cocaine. McGee also stated that the handgun belonged to appellant and that he had been to Texas with appellant on two prior occasions. McGee indicated that appellant made arrangements to purchase 30 pounds of marijuana on their first trip to Texas. McGee was arrested following his interview with the police.[1]

Following their interview with McGee on the morning of March 5, Sondrol and Johnson interviewed appellant. After being advised of and waiving his rights, appellant admitted that he and McGee had returned from buying cocaine in Big Wells, Texas. He explained that he bought about 16 ounces of cocaine from some friends in Texas with McGee's money and that McGee was going to sell the drugs and share the profit with him. Appellant said that his 17–year–old stepdaughter, A.W., had accompanied them on the trip and that he brought the gun back from Texas because McGee said he would buy it with some of the proceeds from the sale of the cocaine. According to appellant, he and McGee traveled to Texas to pick up drugs on one prior occasion. Finally, appellant admitted that he had probably given cocaine to minors at parties and that he had given cocaine to A.W. "[o]nce in a while." Appellant and his wife consented to a search of their residence, and the officers recovered marijuana paraphernalia and ammunition.

On July 6, 2004, appellant pleaded guilty to four counts of controlled substance crime, one count of failing to affix a tax stamp, and one count of being a felon in possession of a firearm. Count I, the relevant crime in this appeal, was conspiracy to commit controlled substance crime in violation of Minn.Stat. § 152.096, subd. 1 (2006), Minn.Stat. § 152.021, subds. 1(1), 2(1), 3(b) (2002), Minn.Stat. § 152.0261, subds. 1, 3 (2006), and Minn.Stat. § 609.11, subd. 5a (2006). On August 23, 2004, the Polk County District Court sentenced appellant to 278 months imprisonment for the conspiracy conviction, reflecting an upward departure based on the court's findings that the offense was a major controlled substance offense, that there were three or more active participants, and that a juvenile was present during the commission of the offense; 158 months imprisonment for first-degree possession of a controlled substance with intent to sell, to be served concurrently with the conspiracy sentence; and 60 months imprisonment for being a felon in possession of a firearm, to be served consecutively to the conspiracy sentence.

On appeal, the court of appeals concluded that appellant's Sixth Amendment rights were violated "[b]ecause the district court imposed a sentence that is an upward durational departure from the presumptive sentence based solely on judicially found facts." State v. Rodriguez, No. A04–2192, 2005 WL 1669493, at *1 (Minn. App. July 19, 2005), rev. denied (Minn. Sept. 28, 2005). The court of appeals reversed and remanded for resentencing in accordance with Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Id.

On remand, a jury sentencing trial was held to determine the existence of aggra-

1. In a subsequent interview with Deputy Sondrol on May 10, 2004, McGee said that he had given appellant only $6,000 and that appellant provided the other $6,000 to purchase the drugs. McGee also stated that his two prior trips to Texas with appellant occurred in January and September of 2003. According to McGee, appellant claimed to have picked up 30 pounds of marijuana on the January trip and appellant returned from the September trip with almost 5 ounces of cocaine and a gun.

vating factors supporting an upward sentencing departure. At the State's request, the district court ruled that the Sixth Amendment right of confrontation and the Minnesota Rules of Evidence do not apply in jury sentencing trials and that McGee's statements to the police were admissible. Deputy Sondrol was the sole witness, and the sentencing jury was informed of the six counts to which appellant pleaded guilty. Appellant objected to the admission of his own recorded police statement as irrelevant; McGee's first recorded police statement on foundation, hearsay, and relevance grounds; and McGee's second recorded police statement on hearsay, relevance, and confrontation grounds. The district court overruled appellant's objections, and the recordings were received into evidence. Finally, the district court denied appellant's request that it give the sentencing jury an accomplice corroboration instruction.

The sentencing jury found four aggravating factors for appellant's conspiracy to commit controlled substance crime conviction. The first aggravating factor found by the sentencing jury was that appellant's conspiracy was a major controlled substance offense, which was supported by the following findings: the offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so; the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; appellant knowingly possessed a firearm during the commission of the offense; and the offense involved a high degree of sophistication or planning,

occurred over a lengthy period of time, or involved a broad geographic area of disbursement.[2] The other aggravating factors found by the sentencing jury were that appellant sold cocaine to juveniles during the course of the offense, that the offense was committed as part of a group of three or more persons who all actively participated in the crime, and that appellant was the parent, legal guardian, or caretaker of a juvenile who was present during the commission of the offense. The district court adopted the sentencing jury's findings and reinstated the sentence it had previously imposed.

Appellant appealed the district court's judgment. The court of appeals affirmed, concluding that (1) the admission of hearsay evidence was harmless in light of appellant's statement to the police and admissions at his guilty plea hearing, (2) the Confrontation Clauses of the United States and Minnesota Constitutions do not apply in jury sentencing trials, (3) the Minnesota Rules of Evidence do not apply in jury sentencing trials, (4) any error in failing to give the sentencing jury an accomplice corroboration instruction was harmless, and (5) the imposition of consecutive sentences did not violate appellant's Sixth Amendment jury-trial right. *State v. Rodriguez*, 738 N.W.2d 422, 428, 431–33 (Minn.App. 2007). We granted appellant's petition for review.[3]

## I.

■ The first issue presented in this case is whether the right of confrontation guaranteed by the Sixth Amendment applies in jury sentencing trials. Appellant

2. Only two of these findings were necessary for the conspiracy to constitute "a major controlled substance offense" under Minn. Sent. Guidelines II.D.2.b(5).

3. We previously granted respondent's motion to strike section III of appellant's brief and deferred respondent's motion to strike section II pending consideration of the appeal on the merits. Respondent's motion to strike section II of appellant's brief is granted.

contends that his rights under the Confrontation Clause were violated by the admission at his jury sentencing trial of McGee's recorded police statements. Whether a defendant's confrontation rights have been violated "is a question of law that we review de novo." *State v. Warsame,* 735 N.W.2d 684, 689 (Minn.2007).

The Sixth Amendment of the United States Constitution provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The Confrontation Clause of the Sixth Amendment guarantees a defendant "the right ... to be confronted with the witnesses against him." *Id.*

### A.

■ Our Confrontation Clause analysis is guided by the United States Supreme Court's recognition of the fundamental and historical importance of the right to trial by jury and the right of cross-examination in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Specifically, these cases establish not only that the facts on which certain sentence enhancements are based must be found by a jury, but also that the right of cross-examination guaranteed by the Confrontation Clause is a core component of the right to a jury trial.

The defendant in *Apprendi* pleaded guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an antipersonnel bomb. 530 U.S. at 469–70, 120 S.Ct. 2348. Pursuant to a New Jersey statute allowing a trial court to sentence a defendant "to an extended term of imprisonment" where the trial court finds that the crime was committed for the purpose of intimidation on the basis "of race, color, gender, handicap, religion, sexual orientation or ethnicity," N.J. Stat. Ann. § 2C:44–3(e) (West 2000), the trial court made the requisite finding and enhanced the defendant's sentence. 530 U.S. at 468–71, 120 S.Ct. 2348.

The Supreme Court reversed the defendant's sentence and struck down the New Jersey statute as unconstitutional, concluding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490–92, 497, 120 S.Ct. 2348. Noting that "the historical foundation for our recognition of these principles extends down centuries into the common law," the Court explained that "trial by jury has been understood to require that *'the truth of every accusation,* whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours.' " *Id.* at 477, 120 S.Ct. 2348 (quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)). The Court observed that the trial-by-jury requirement " 'guard[s] against a spirit of oppression and tyranny on the part of rulers' " and serves " 'as the great bulwark of [our] civil and political liberties.' " *Id.* (quoting 2 J. Story, Com-

mentaries on the Constitution of the United States 540–41 (4th ed. 1873)) (first alteration added).

The Supreme Court applied the *Apprendi* rule in *Blakely v. Washington,* in which the defendant had pleaded guilty to second-degree kidnapping involving domestic violence and use of a firearm. 542 U.S. at 298–99, 124 S.Ct. 2531. The trial court departed upward from the presumptive sentence pursuant to a Washington statute providing that "[t]he court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence," Wash. Rev.Code § 9.94A.120(2) (2000). 542 U.S. at 299–301, 124 S.Ct. 2531. The trial court found that the defendant had acted with "deliberate cruelty," a statutorily delineated "aggravating circumstance" in domestic violence cases, Wash. Rev.Code § 9.94A.390(2)(h)(iii) (2000). 542 U.S. at 300, 124 S.Ct. 2531.

The Supreme Court reversed the defendant's sentence, noting that the facts supporting the trial court's finding of deliberate cruelty "were neither admitted by [the defendant] nor found by a jury." *Id.* at 303, 305, 124 S.Ct. 2531. The Court applied the rule it had announced in *Apprendi* that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " [4] *Id.* at 301, 124 S.Ct. 2531 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348). The Court described the historical bases of the *Apprendi* rule as follows:

This rule reflects two longstanding tenets of common-law criminal juris-

prudence: that the "truth of every accusation" against a defendant "should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours," 4 W. Blackstone, Commentaries on the Laws of England 343 (1769), and that "an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law, and it is no accusation in reason," 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed. 1872).

542 U.S. at 301–02, 124 S.Ct. 2531.

Prior to the Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the admissibility of a statement by an unavailable hearsay declarant satisfied the Confrontation Clause if the statement bore "adequate 'indicia of reliability,' " and an out-of-court statement was deemed sufficiently reliable if it fell "within a firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Court in *Crawford* rejected the reliability standard and disentangled the right of confrontation from the hearsay rules, explaining that "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' " 541 U.S. at 61, 124 S.Ct. 1354. According to the Court, the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* As in *Apprendi* and *Blakely,* the Court

**4.** The Court defined " 'statutory maximum' for *Apprendi* purposes" as "the maximum sentence a judge may impose *solely on the basis* of the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531.

turned to the historical understanding of the Sixth Amendment, quoting Blackstone's observation that the " 'open examination of witnesses ... is much more conducive to the clearing up of truth.' " *Id.* at 61–62, 124 S.Ct. 1354 (quoting 3 Blackstone, Commentaries on the Laws of England 373 (1768)).

Accordingly, the Supreme Court held that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54, 124 S.Ct. 1354. The Court explained that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused," and stated that "[t]he Sixth Amendment must be interpreted with this focus in mind." *Id.* at 50, 124 S.Ct. 1354.

In *Apprendi,* 530 U.S. at 477, 120 S.Ct. 2348 (quoting 4 Blackstone, Commentaries, at 343), and *Blakely,* 542 U.S. at 301, 124 S.Ct. 2531 (quoting 4 Blackstone, Commentaries, at 343), the Supreme Court emphasized the right to have a jury find " 'the truth of every accusation' " beyond a reasonable doubt. This trial-by-jury requirement, the Court explained in *Apprendi,* is " 'the great bulwark of [our] civil and political liberties.' " 530 U.S. at 477, 120 S.Ct. 2348 (quoting 2 Story, Commentaries, at 540–41). Furthermore, the Court emphasized in *Crawford* that the Confrontation Clause requires that the reliability of testimonial statements be as-

sessed "by testing in the crucible of cross-examination." 541 U.S. at 61, 124 S.Ct. 1354. The admission at a jury sentencing trial of testimonial statements of a witness who did not testify and who has not previously been subject to cross-examination surely constitutes the "use of *ex parte* examinations as evidence against the accused," which is "the principal evil at which the Confrontation Clause was directed." *Id.* at 50, 124 S.Ct. 1354. Because cross-examination is a core component of a defendant's right to a jury trial, we hold that the right of confrontation guaranteed by the Sixth Amendment applies in jury sentencing trials.[5]

Our interpretation of *Apprendi, Blakely,* and *Crawford* is supported by our own case law and rules of criminal procedure. In *State v. Adams,* we stated that due process guarantees a defendant the right of confrontation in certain sentencing proceedings:

> It is well recognized that a trial judge is not bound by the same rules of evidence in sentencing as in the trial in which a defendant is convicted. However, due process guarantees the defendant notice, an opportunity to be heard, confrontation and cross-examination of witnesses in extended sentence hearings.

295 N.W.2d 527, 535 (Minn.1980) (internal citations omitted). We recognize that *Adams* involved a due process challenge rather than a confrontation challenge and that the sentencing proceeding in *Adams* was conducted pursuant to a statute that has since been repealed.[6] *See id.* at 535–

---

**5.** Because we interpret the Confrontation Clause of the Minnesota Constitution identically to the Confrontation Clause of the United States Constitution, *State v. Dukes,* 544 N.W.2d 13, 19 (Minn.1996), the Confrontation Clause of the Minnesota Constitution applies in jury sentencing trials as well.

**6.** The sentencing proceeding at issue in *Adams* was an "extended sentence hearing" under Minn.Stat. § 609.16 (1978) (repealed 1978, effective May 1, 1980), which provided for the imposition of an "extended term of imprisonment" for a defendant who had previously been convicted of a felony.

36. But *Adams* is instructive insofar as it demonstrates that even before *Apprendi*, *Blakely*, and *Crawford* altered the sentencing and Confrontation Clause landscapes, we were sensitive to the confrontation rights of defendants at sentencing.

Furthermore, we held in *State v. Dettman* "that a defendant must expressly, knowingly, voluntarily, and intelligently waive his right to a jury determination of facts supporting an upward sentencing departure before his statements at his guilty-plea hearing may be used to enhance his sentence." 719 N.W.2d 644, 650–51 (Minn. 2006). Noting "that a defendant's waiver of his right to a jury trial on the elements of an offense must be knowing, intelligent, and voluntary," we concluded that there is "no principled basis for differentiating between a waiver of the right to a jury trial on the elements of an offense and a waiver of the right to a jury determination of aggravating sentencing factors." *Id.* at 651. "Both rights," we observed, "arise from the same Sixth Amendment guarantee." *Id.* The rationale behind our holding in *Dettman* supports our conclusion that the right of confrontation applies in jury sentencing trials—if the Sixth Amendment right to a jury trial applies in jury sentencing trials, then the right of cross-examination, which is a core component of the jury trial right, applies in jury sentencing trials.

The relationship between the right to a jury trial and the right of confrontation is also reflected in Minn. R.Crim. P. 15.01, subd. 2, which provides as follows:

> Before the court accepts an admission of facts in support of an aggravated sentence, the defendant shall be sworn and questioned by the court with the assistance of counsel . . . as to the following:
>
> \* \* \* \*
>
> 7. a. Whether the defendant has been told by defense counsel and understands that if the defendant wishes to deny the facts alleged in support of an aggravated sentence and have a trial by a jury or a judge, the prosecutor will be required to have the prosecution witnesses testify in open court in the defendant's presence, and that the defendant will have the right, through defense counsel, to question these witnesses.
>
> b. Whether the defendant waives the right to have these witnesses testify in the defendant's presence and be questioned by defense counsel.

In the absence of a right of confrontation in jury sentencing trials, there would be no reason for Minn. R.Crim. P. 15.01, subd. 2, to require that a defendant waive *"the right"* to question the witnesses and *"the right* to have these witnesses testify in the defendant's presence and be questioned by defense counsel." *Id.* (emphasis added). Despite the fact that the current version of Minn. R.Crim. P. 15.01, subd. 2, was not in effect when the sentencing jury found appellant guilty of the four aggravating factors, the rule informs our conclusion that the Sixth Amendment right of confrontation applies in jury sentencing trials.

### B.

Having held that the right of confrontation guaranteed by the Sixth Amendment applies in jury sentencing trials, we must next determine whether appellant's confrontation rights were violated by the admission at his jury sentencing trial of McGee's recorded police statements. Under *Crawford*, the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54, 124 S.Ct. 1354.

The Supreme Court stated in *Crawford* that "[s]tatements taken by police officers

in the course of interrogations are ... testimonial under even a narrow standard." *Id.* at 52, 124 S.Ct. 1354. The Court expounded on its definition of "testimonial" in *Davis v. Washington,* explaining that "[s]tatements ... made in the course of police interrogation ... are testimonial when the circumstances objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). McGee's statements to the police on March 5, 2004, and May 10, 2004, are clearly "testimonial" under this standard. Additionally, McGee did not testify at appellant's jury sentencing trial (despite his availability), and appellant had no prior opportunity to cross-examine him. Therefore, we hold that the admission at appellant's jury sentencing trial of McGee's recorded police statements violated appellant's confrontation rights under the Sixth Amendment.

### C.

■ Our holding that appellant's confrontation rights under the Sixth Amendment were violated by the admission of McGee's recorded police statements does not end our inquiry, for such violations "are subject to harmless error analysis." *State v. Ferguson,* 742 N.W.2d 651, 656–57 (Minn.2007). We have stated that for a Confrontation Clause "violation to be deemed harmless, it must be harmless beyond a reasonable doubt." *State v. Courtney,* 696 N.W.2d 73, 79 (Minn.2005). "An error is harmless beyond a reasonable doubt if the guilty verdict actually rendered was 'surely unattributable' to the error." *Id.* at 80 (quoting *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997)). Therefore, if the sentencing jury's findings of the aggravating factors in this case were sure-

ly unattributable to the admission of McGee's statements, then the district court's error in admitting the statements was harmless and appellant's sentence is not reversible on Confrontation Clause grounds.

■ The Minnesota Sentencing Guidelines provide a nonexclusive list of aggravating factors justifying upward sentencing departures. Minn. Sent. Guidelines II.D.2. The first aggravating factor found by the sentencing jury was that appellant's conspiracy was a "major controlled substance offense," which is defined "as an offense or series of offenses related to trafficking in controlled substances under circumstances more onerous than the usual offense." Minn. Sent. Guidelines II.D.2.b(5). The presence of two or more of seven delineated aggravating circumstances renders an offense a major controlled substance offense. *Id.* The sentencing jury found that appellant's conspiracy to commit controlled substance crime constituted a major controlled substance offense based on the presence of the following aggravating circumstances: the offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so; the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; appellant knowingly possessed a firearm during the commission of the offense; and the offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, or involved a broad geographic area of disbursement. Appellant admitted in his statement to the police that he purchased approximately 16 ounces of cocaine for McGee to sell, and the jury could infer from Deputy Sondrol's testimony regarding typical drug users that

this quantity is substantially larger than for ordinary personal use. Furthermore, appellant admitted at his guilty plea hearing that the conspiracy was committed from on or about January 2003 to on or about March 2004, which is a lengthy period of time, and that he imported the cocaine into Minnesota from Texas, which is a broad geographic area of disbursement. Accordingly, the sentencing jury's finding that appellant's conspiracy to commit controlled substance crime constituted a major controlled substance offense was surely unattributable to the admission of McGee's statements at appellant's jury sentencing trial.

■■■■ The sentencing jury's findings of the other aggravating factors were also surely unattributable to the admission of McGee's statements. The second aggravating factor found by the sentencing jury was that appellant sold cocaine to juveniles during the course of the conspiracy. Appellant admitted in his statement to the police that he had "probably" given cocaine to minors and that he had given drugs to A.W. "[o]nce in a while," and McGee did not provide the police any information regarding appellant's provision of cocaine to juveniles. The third aggravating factor found by the sentencing jury was that the conspiracy was committed as part of a group of three or more persons who all actively participated in the crime, and appellant disclosed at his guilty plea hearing and in his police statement that McGee and the seller of the cocaine in Texas were involved in the crime. Finally, the sentencing jury found that appellant was the parent, legal guardian, or caretaker of a juvenile who was present during the commission of the conspiracy, and appellant admitted in his statement to the police that A.W., his 17–year–old stepdaughter, accompanied appellant and McGee on their trip to Texas.

The sentencing jury's findings of the four aggravating factors in this case were surely unattributable to the admission of McGee's recorded police statements, which were largely cumulative to appellant's admissions in his police interview and at his guilty plea hearing. Therefore, the admission of McGee's statements in violation of appellant's right of confrontation guaranteed by the Sixth Amendment was harmless beyond a reasonable doubt.

## II.

Having concluded that the Confrontation Clause applies in jury sentencing trials, we next consider whether the Minnesota Rules of Evidence apply in jury sentencing trials. Appellant objected at his jury sentencing trial to the admission of McGee's first recorded police statement on foundation, hearsay, and relevance grounds and to the admission of McGee's second recorded police statement on hearsay and relevance grounds.[7] Appellant argues that the district court erred in refusing to apply the rules of evidence at his jury sentencing trial.

■■■■ Minnesota Rule of Evidence 1101(a) provides that "[e]xcept as otherwise provided" in Minn. R. Evid. 1101(b), the rules of evidence "apply to all actions and proceedings in the courts of this state." Although Minn. R. Evid. 1101(b)(3) states that the rules of evidence do not apply in "[p]roceedings for . . . sentencing," it makes no reference to jury sentencing trials. Under the plain language of Minn. R. Evid. 1101(a), the rules of evidence apply in jury sentencing trials, which are not listed as an exception in Minn. R. Evid. 1101(b). We, therefore,

---

7. Appellant also objected to the admission of his own recorded police statement as irrele-

vant, but he now acknowledges that his statement was properly admitted.

hold that the Minnesota Rules of Evidence apply in jury sentencing trials and that the district court erred in ruling to the contrary.[8]

The "[e]rroneous admission of evidence that does not have constitutional implications is harmless if there is no 'reasonable possibility that the wrongfully admitted evidence significantly affected the verdict.'" *State v. Robinson*, 718 N.W.2d 400, 407 (Minn.2006) (quoting *State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994)). For the same reasons we deem the Confrontation Clause violation harmless, we also conclude that there is no reasonable possibility that McGee's statements significantly affected the sentencing jury's findings of the four aggravating factors in this case. We hold, therefore, that any error on the part of the district court in admitting McGee's recorded police statements in contravention of the Minnesota Rules of Evidence was harmless.

### III.

Appellant also argues that his due process rights were violated when the district court declined to give the sentencing jury an accomplice corroboration instruction at his jury sentencing trial. Under Minn.Stat. § 634.04 (2006), "[a] conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense." Because an accomplice's credibili-

ty is inherently untrustworthy, "[a]n accomplice instruction 'must be given in any criminal case in which any witness against the defendant might reasonably be considered an accomplice to the crime.'" *State v. Lee*, 683 N.W.2d 309, 316 (Minn.2004) (quoting *State v. Shoop*, 441 N.W.2d 475, 479 (Minn.1989)).

The accomplice corroboration requirement, Minn.Stat. § 634.04, is a statutory protection created by the legislature, and we cannot disregard the unambiguous language of a statute "under the pretext of pursuing [its] spirit," Minn.Stat. § 645.16 (2006). "Conviction" is defined as "[t]he act or process of judicially finding someone guilty of a crime" and "[t]he judgment (as by a jury verdict) that a person is guilty of a crime." *Black's Law Dictionary* 358 (8th ed.2004). Minnesota Statutes § 634.04 and the corresponding accomplice corroboration instruction requirement do not apply in a jury sentencing trial, which occurs *after* a defendant has been convicted. We recognize that the principles underlying Minn.Stat. § 634.04 are applicable to a sentencing jury's findings of aggravating factors, but it is the prerogative of the legislature, not this court, to extend the statute accordingly. We hold that the accomplice corroboration instruction requirement does not apply in jury sentencing trials and that the district court thus did not err in denying appellant's request for an accomplice corroboration instruction.[9]

---

8. We also note that Minn. R. Evid. 1101 was adopted in 1977, long before the Supreme Court rendered its decisions in *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Accordingly, a jury sentencing trial is not a sentencing proceeding as contemplated when Minn. R. Evid. 1101 was adopted.

9. Minnesota Statutes § 634.04 and the accompanying accomplice corroboration instruction requirement provide defendants greater protection than did the common law requirement that courts give "a cautionary instruction concerning the weight of [accomplice] testimony." *State v. Armstrong*, 257 Minn. 295, 307, 101 N.W.2d 398, 406 (1960). The applicability of the common law rule in jury sentencing trials is an issue that is not properly before us.

## IV.

 The final issue before us is whether the district court erred in relying, in part, on appellant's possession of the handgun to support its upward sentencing departure. We review a district court's departure from the presumptive sentence under the Minnesota Sentencing Guidelines for an abuse of discretion. *State v. Losh*, 721 N.W.2d 886, 895 (Minn.2006).

"We have ... held that conduct underlying one conviction for which a defendant was sentenced cannot be used to support an upward sentencing departure for a separate conviction." *State v. Osborne*, 715 N.W.2d 436, 446 (Minn.2006) (citing *State v. McIntosh*, 641 N.W.2d 3, 9 (Minn.2002)). The district court indicated that it relied, in part, on appellant's possession of the handgun for its upward sentencing departure, explaining that it "believe[d] that [appellant's] provision (or sale) of cocaine to juveniles, including his own 17–year-old step-daughter, and his importation of approximately 13 ounces of cocaine into Minnesota *with a possibly stolen semiautomatic pistol*, while his step-daughter was present, justifie[d] the double upward durational departure imposed." (Emphasis added.) Because appellant's possession of the handgun constituted conduct underlying his felon in possession conviction, the district court erred in relying on appellant's possession of the handgun to support the upward sentencing departure for his conspiracy to commit controlled substance crime offense.

 "If the reasons given [for departure] are improper or inadequate, but there is sufficient evidence in the record to justify the departure, the departure will be

affirmed." *Losh*, 721 N.W.2d at 896 (quoting *McIntosh*, 641 N.W.2d at 8); *see also State v. Thompson*, 720 N.W.2d 820, 829–31 (Minn.2006). The sentencing jury's findings that appellant's conspiracy involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use and that it involved a high degree of sophistication or planning, occurred over a lengthy period of time, or involved a broad geographic area of disbursement support the finding of the major controlled substance offense aggravating factor under Minn. Sent. Guidelines II.D.2.b(5). Because the record contains sufficient evidence to justify the departure, we affirm appellant's sentence.

Affirmed.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring).

I join the majority opinion with one exception. I would remand for resentencing in light of our opinion rather than simply affirm on the ground that the record contains sufficient evidence to justify the district court's significant upward sentencing departure.

The appellant, Pedro Maldono Rodriguez, Jr., has committed some very bad acts and made some unwise choices for which the district court has sentenced him to serve 338 months (28.17 years) in prison. This sentence is a significant upward departure from what the sentencing guidelines require.[1] We have now held that the

---

1. The 120–month upward durational departure imposed in this case is substantially greater than the upward durational departures imposed by other district courts in cases

involving the major controlled substance crime aggravating sentencing factor. *See State v. Osborne,* 715 N.W.2d 436, 439 (Minn. 2006) (imposing a 225–month sentence,

sentencing fact-finding jury properly found that there were aggravating factors that support an upward departure in Rodriguez's sentence. But, we have also concluded that there were errors, albeit harmless errors, that were part of the process used in reaching this result. It is possible that upon remand the district court may still impose the same sentence notwithstanding these errors, and I conclude that if it did so such a sentence would be legal under our decision. Nevertheless, I am not convinced that upon remand, the district court would reimpose the same sentence or should do so. Therefore, in light of the district court's substantial upward departure and the errors that occurred during sentencing, I would remand for resentencing in light of our holding, rather than affirm the court's sentence.

PAGE, Justice (concurring).

I join in the concurrence of Justice Paul H. Anderson.

which was a 67–month upward departure from the presumptive 158–month sentence); *State v. McIntosh,* 641 N.W.2d 3, 8 (Minn. 2002) (imposing a 122–month sentence, which was a 24–month upward departure from the presumptive 98–month sentence).