STATE OF MINNESOTA

IN SUPREME COURT

A14-0584

Court of Appeals                                                                      Hudson, J.
                                                    Concurring in part, dissenting in part,
                                                                        Anderson, Dietzen, JJ.
                                                                    Took no part, Chutich, J.

State of Minnesota,

                        Respondent,

vs.                                                                          Filed:  May 18, 2016
                                                                      Office of Appellate Courts

Julian Sanchez-Sanchez,

                        Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Mary F. Moriarty, Chief Hennepin County Public Defender, Peter W. Gorman, Assistant Hennepin County Public Defender, Minneapolis, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The Minnesota Rules of Evidence apply to *Blakely* court trials.

2.      The district court erred when it failed to apply the rules of evidence to appellant's *Blakely* court trial, but the unobjected-to error was not plain.

Affirmed as modified.

1

OPINION

HUDSON, Justice.

This case presents the issue of whether the Minnesota Rules of Evidence apply in a court trial, which was held in accordance with *Blakely v. Washington*, 542 U.S. 296 (2004), to determine whether any aggravating sentencing factors exist. Following a straight guilty plea, appellant Julian Sanchez-Sanchez waived his right to have a jury determine whether aggravating factors existed to justify an upward durational departure in his sentence. Instead, Sanchez-Sanchez submitted the *Blakely* question to the district court. Without objection, the district court failed to apply the rules of evidence during the *Blakely* court trial. After hearing the testimony of the State's sole witness at trial, the district court found the existence of several aggravating factors and sentenced Sanchez-Sanchez to 240 months in prison, which reflected an upward durational departure from the presumptive sentencing range of 74 to 103 months. The court of appeals affirmed, concluding in part that the rules of evidence do not apply during a *Blakely* court trial. Based on the language of Minn. R. Evid. 1101 and *State v. Rodriguez*, 754 N.W.2d 672 (Minn. 2008), we conclude that the rules of evidence apply in a *Blakely* court trial, but that such a conclusion was not previously clear or obvious. We therefore affirm as modified.

I.

In March 2013, the State of Minnesota charged appellant Sanchez-Sanchez with conspiracy to commit a first-degree sale of methamphetamine while a co-conspirator possessed a firearm. *See* Minn. Stat. §§ 152.021, subd. 1(1), 152.096, subd. 1, 609.101,

subd. 3, 609.11 (2014).  The charge stemmed from an investigation by the Federal Bureau of Investigation (FBI) of a large interstate methamphetamine trafficking network. The complaint alleged that Sanchez-Sanchez had a leadership role in "La Familia Michoacana," a Mexican drug cartel that was distributing methamphetamine. Specifically, the State maintained that Sanchez-Sanchez conspired with about 21 other people to sell approximately 17 pounds of methamphetamine.

The complaint detailed Sanchez-Sanchez's involvement in the conspiracy from May 2010 until March 7, 2012.  Sanchez-Sanchez, whose primary residence was in California, rented a house in Brooklyn Park, Minnesota that was used as a "stash house" to store and distribute methamphetamine in Minnesota.  Sanchez-Sanchez sometimes stayed at the house and co-directed the methamphetamine distribution.  The complaint also documented a series of calls between Sanchez-Sanchez and a co-conspirator that showed that Sanchez-Sanchez arranged and directed the co-conspirator's pickup of 9.6 pounds of methamphetamine in California for transport to Minnesota.

The State notified Sanchez-Sanchez that it intended to seek an upward durational sentencing departure based on the presence of three aggravating factors: (1) the offense constituted a "major controlled substance offense," Minn. Sent. Guidelines 2.D.3.b(5); (2) Sanchez-Sanchez committed the crime as part of a group of three or more people who all actively participated in the crime, Minn. Sent. Guidelines 2.D.3.b(10); and (3) Sanchez-Sanchez's conduct placed a number of people at risk.

The State offered Sanchez-Sanchez a 172-month sentence in exchange for his guilty plea to the charged offense.  Sanchez-Sanchez rejected the offer.  Instead, in July

3

2013, Sanchez-Sanchez entered a straight plea to the charge of conspiracy to commit a first-degree controlled substance crime, meaning he pleaded guilty to the offense but did not enter into any agreement regarding sentencing. *See State v. Thompson*, 720 N.W.2d 820, 823 (Minn. 2006).

At the plea hearing, Sanchez-Sanchez waived his right under *Blakely v. Washington*, 542 U.S. 296 (2004), to have a jury determine whether aggravating factors existed to justify an upward durational departure in his sentence. Sanchez-Sanchez understood that he was still entitled to a *Blakely* court trial before a judge to determine whether the alleged aggravating factors existed.

Without objection, the district court did not apply the Minnesota Rules of Evidence during Sanchez-Sanchez's *Blakely* court trial, which allowed the State to present its entire case through a single witness: FBI Special Agent Andrew Mento. Agent Mento was one of the case agents involved in the investigation that resulted in charges against Sanchez-Sanchez and 21 other defendants. During his testimony, Agent Mento recounted how the FBI investigation led to Sanchez-Sanchez. Using wiretaps, the FBI was able to intercept telephone calls between Sanchez-Sanchez and Daniel Samorano, a co-conspirator. The calls were placed while Samorano was in California to pick up drugs to bring back to Minnesota. Agent Mento testified about the calls in detail and explained how they showed that Sanchez-Sanchez orchestrated Samorano's acquisition of a car that was used to transport drugs and cash in a hidden trunk compartment.

4

According to Agent Mento, law enforcement stopped Samorano in Medford, Minnesota and found approximately 10 pounds of methamphetamine packed in coffee grounds in a hidden compartment in the car that he was driving. Agent Mento testified that, based on what an expert told him, the sophistication of the hidden compartment was consistent with "a large-scale Mexican drug trafficking organization"—"La Familia Michoacana." Agent Mento estimated that the methamphetamine had a street value of $300,000.

Agent Mento additionally testified to statements made by lower-level, cooperating co-conspirators, which were received without objection. In those statements, co-conspirators identified Sanchez-Sanchez as having a role at the highest levels of the conspiracy. Agent Mento then explained how other evidence, including drug ledgers and bank notes found at the Brooklyn Park home that Sanchez-Sanchez leased, also linked Sanchez-Sanchez to the conspiracy. According to Agent Mento, the total amount of methamphetamine recovered in connection with the investigation was about 16 pounds, which was the equivalent of 36,000 "hits"[1] of methamphetamine.

At the end of the trial, the district court concluded that the State had proved beyond a reasonable doubt all three of the aggravating sentencing factors. Based on its findings, the district court imposed a 240-month sentence—a greater-than-double upward durational departure from the presumptive sentencing range of 74 to 103 months. *See*

---

[1]     Agent Mento's testimony suggested that a "hit" is equivalent to about 0.2 grams of methamphetamine, which is the amount he expected a typical user to purchase for his or her use.

Minn. Sent. Guidelines 4.A (showing the sentencing-guidelines grid used to determine a defendant's presumptive sentencing range).

On appeal, Sanchez-Sanchez argued, among other claims, that the district court committed plain error when it failed to apply the rules of evidence during the *Blakely* court trial, allowing the admission of "hearsay provided by anonymous informants and other arrestees, and related by FBI [A]gent Mento." According to Sanchez-Sanchez, Agent Mento's testimony regarding the out-of-court statements of the cooperating co-conspirators was inadmissible under Minn. R. Evid. 801(d)(2)(E) (explaining the showing required to admit statements made by a co-conspirator in furtherance of the conspiracy as non-hearsay). Sanchez-Sanchez therefore claimed that, "virtually all of Agent Mento's testimony should have been inadmissible at the sentencing hearing," and the district court plainly erred by relying on it.

The court of appeals held that the district court did not err by admitting the hearsay testimony. *State v. Sanchez-Sanchez*, No. A14-0584, 2015 WL 1880196, at \*2 (Minn. App. Apr. 27, 2015). In so holding, the court of appeals stated that "[t]he rules of evidence do not apply at a sentencing proceeding without a jury." *Id.* Citing to our decision in *State v. Rodriguez*, 754 N.W.2d 672 (Minn. 2008), the court concluded that the rules of evidence apply only to a *Blakely* jury trial. Sanchez-Sanchez, however, had waived his right to a jury determination, and therefore the court concluded that *Rodriguez* was inapplicable. *Sanchez-Sanchez*, 2015 WL 1880196, at \*2 n.1. Having concluded that there was no error, the court of appeals did not consider the remaining prongs of the

plain-error test.[2] We granted review on the issue of whether the rules of evidence apply

to a *Blakely* court trial.[3]

## II.

Minnesota Rule of Evidence 1101 governs the application of the rules of evidence

to actions and proceedings in Minnesota. The Rule reads, in relevant part:

> (a)    Except as otherwise provided in subdivision (b), these rules apply to all actions and proceedings in the courts of this state.
>
> (b)    **Rules inapplicable.**  The rules other than those with respect to privileges do not apply in the following situations:
>
> . . . .
>
> (3)    *Miscellaneous proceedings.*  Proceedings for extradition or rendition; probable cause hearings; *sentencing*, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

---

[2]    "Under the plain-error doctrine, the appellant must show that there was (1) an error; (2) that is plain; and (3) the error must affect [the appellant's] substantial rights." *State v. Kelley*, 855 N.W.2d 269, 273-74 (Minn. 2014). "If the appellant satisfies the first three prongs of the plain-error doctrine, we may correct the error only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 274 (citations omitted) (internal quotation marks omitted).

[3]    To the extent Sanchez-Sanchez argues that the district court's admission of the hearsay-based testimony violates the Confrontation Clause, that argument is not properly before us. Sanchez-Sanchez did not raise that issue in his petition for review, and we granted review only as to the issue of whether the rules of evidence apply to *Blakely* court trials. *See State v. Garcia-Gutierrez*, 844 N.W.2d 519, 522 n.4 (Minn. 2014) (declining to address an issue because it was not raised in the State's petition for review); *see also In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005) (explaining that we generally do not address issues that were not raised in a petition for review). Therefore, this argument is forfeited.

Minn. R. Evid. 1101 (emphasis added). The question, therefore, is whether a *Blakely* court trial qualifies as "sentencing" under Minn. R. Evid. 1101(b)(3). We review the interpretation and application of the rules of evidence de novo. *See State v. Stone*, 784 N.W.2d 367, 370 (Minn. 2010) (reviewing de novo whether the district court properly interpreted Minn. R. Evid. 803(5)); *see also State v. Heaney*, 689 N.W.2d 168, 171 (Minn. 2004) ("The construction of statutes and rules is subject to de novo review.").

In *State v. Rodriguez*, 754 N.W.2d 672 (Minn. 2008), we considered the plain meaning of "proceeding" in Minn. R. Evid. 1101(b)(3). There, among other questions, we examined whether the district court erred in refusing to apply the rules of evidence at Rodriguez's "jury sentencing trial." *Rodriguez*, 754 N.W.2d at 683. The phrase "jury sentencing trial" referred to a defendant's right to have a jury determine whether aggravating factors exist to support an upward sentencing departure, as required by *Blakely*, 542 U.S. at 301. *See Rodriguez*, 754 N.W.2d at 676-77; *see also id.* at 684 n.8.

In *Rodriguez*, we held that the Minnesota Rules of Evidence apply in "jury sentencing trials." *Id.* at 683-84. Our analysis hinged on the plain language of the rule: "Under the plain language of Minn. R. Evid. 1101(a), the rules of evidence apply in jury sentencing trials, which are not listed as an exception in Minn. R. Evid. 1101(b)." *Id.* at 683. We therefore drew a distinction between a "sentencing," as contemplated when Minn. R. Evid. 1101 was adopted in 1977, and a "jury sentencing trial," which developed from *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely*. *Rodriguez*, 754 N.W.2d at 684 n.8.

8

Here, the court of appeals determined that "[t]he rules of evidence do not apply at a sentencing proceeding without a jury." *Sanchez-Sanchez*, 2015 WL 1880196, at \*2. In reaching this conclusion, the court of appeals relied on both Minn. R. Evid. 1101(b)(3) and our decision in *Rodriguez*. The court of appeals reasoned that *Rodriguez* limited the application of the Minnesota Rules of Evidence to *Blakely* jury trials. *Sanchez-Sanchez*, 2015 WL 1880196, at \*2 n.1. Accordingly, because Sanchez-Sanchez waived his right to a jury determination and instead elected to have a *Blakely* court trial, the court of appeals held that the rules of evidence did not apply. *Id.*

Although we did not explicitly state that the Minnesota Rules of Evidence applied to *Blakely* court trials in *Rodriguez*, our decision should not be read as intentionally cabining the application of the rules of evidence to only *Blakely* jury trials. As we recognized in *Rodriguez* and as Sanchez-Sanchez argues here, there is a substantive difference between an ordinary sentencing hearing following a trial or a guilty plea and a sentencing trial where adjudicatory facts are determined. *See Rodriguez*, 754 N.W.2d at 684 n.8. At the time of its adoption, Rule 1101 equated "sentencing" with a sentencing hearing. *See id.* At a sentencing hearing, counsel for each party tries to persuade the district court why a particular sentence is appropriate. *See Presentencing Hearing*, Black's Law Dictionary (10th ed. 2014) (describing a sentencing hearing as a proceeding at which a judge "receives and examines all relevant information regarding a convicted criminal and the related offense before passing sentence"). In contrast, a *Blakely* trial considers whether aggravating sentencing factors exist. Any aggravating factors must be proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301. In this respect, a *Blakely*

9

trial is functionally the same as a criminal defendant's trial during the adjudication-of-guilt phase. A criminal defendant has the right to a trial by jury or by the court, Minn. R. Crim. P. 26.01, subd. 1(2)(b), and when a defendant waives that right to a trial by jury, the rules of evidence nonetheless apply to the bench trial.

The same reasoning that we relied on in *Rodriguez* applies here. Sentencing, as used in Minn. R. Evid. 1101(b)(3), excludes *Blakely* jury trials and *Blakely* court trials. Therefore, under Minn. R. Evid. 1101(a), the Minnesota Rules of Evidence apply to all *Blakely* trials, whether before a judge or a jury.

The State argues that this interpretation of Rule 1101(b)(3) is absurd because it renders the word "sentencing" superfluous. We disagree. The word "sentencing" is not superfluous because it still refers to the proceeding at which a judge listens to the parties' sentencing arguments; considers all the relevant facts, including the special verdicts returned at an earlier *Blakely* trial; and then announces the sentence.

In sum, regardless of whether a judge *or* a jury serves as the trier of fact at a sentencing trial to determine whether aggravated sentencing factors exist, the term "sentencing" as used in Minn. R. Evid. 1101 does not include such a trial, whether it is conducted before a judge or jury. We therefore hold that the Minnesota Rules of Evidence apply to a *Blakely* court trial.

III.

Having determined that the Minnesota Rules of Evidence apply to a *Blakely* court trial, we must next decide whether the district court's unobjected-to failure to apply the rules of evidence during Sanchez-Sanchez's *Blakely* court trial constitutes an error that is

plain. A "plain" error is an error that is "clear or obvious" at the time of appeal. *State v. Peltier*, 874 N.W.2d 792, 799 (Minn. 2016); *State v. Kelley*, 855 N.W.2d 269, 277 (Minn. 2014). "An error is clear or obvious if it 'contravenes case law, a rule, or a standard of conduct.' " *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014) (quoting *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). If the district court did not plainly err, then we need not address whether appellant's substantial rights were affected. *See State v. Martinez*, 725 N.W.2d 733, 738 (Minn. 2007). Therefore, to prevail, Sanchez-Sanchez must show that it was "clear or obvious" that the Minnesota Rules of Evidence apply to *Blakely* court trials.

Sanchez-Sanchez argues that the error was plain because *Rodriguez* made it clear and obvious that the "sentencing" exemption in Minn. R. Evid. 1101(b)(3) does not apply to *Blakely* sentencing trials. We disagree.

*Rodriguez* held that the Minnesota Rules of Evidence apply to "sentencing jury trials" and made no mention of sentencing court trials. Because we did not explicitly reference sentencing court trials, lower courts read our opinion as narrowly applying the rules of evidence to only *Blakely* jury trials, not *Blakely* court trials. Although the lower courts' narrow interpretation of *Rodriguez* was ultimately incorrect, it was not clearly or obviously wrong. Consequently, we are faced with a situation that is similar to *State v. Milton*, 821 N.W.2d 789 (Minn. 2012).

In *Milton*, we considered the district court's unobjected-to failure to fully instruct the jury on the issue of aiding and abetting. 821 N.W.2d at 806-07. We acknowledged that we had "never before specifically required district courts to explain to juries that a

11

defendant intentionally aids another person if the defendant knowingly and intentionally assists in the commission of the underlying crime." *Id.* at 807. Nevertheless, we concluded that our reasoning in an earlier case, *State v. Mahkuk*, 736 N.W.2d 675, 682-83 (Minn. 2007), required such an instruction. *Milton*, 821 N.W.2d at 807. Because we had "not yet clearly required district courts to include a specific explanation of the 'intentionally aiding' element . . . , we conclude[d] that the court's instructions did not constitute 'clear' or 'obvious' error, and thus the court's error [was] not plain." *Id.*

Our reasoning in *Milton* applies with equal force here. Until today, we had never clearly required district courts to apply the rules of evidence in a *Blakely* court trial. Consequently, we cannot say that the district court's unobjected-to failure to apply the rules of evidence in this case constitutes a clear or obvious error. We therefore conclude that, although the district court erred, the error was not plain.[4]

In sum, we hold that the lower courts erred when they concluded that the Minnesota Rules of Evidence did not apply to Sanchez-Sanchez's *Blakely* court trial. However, because there was no objection and the error was not plain, we affirm the court of appeals' decision as modified by this opinion.

Affirmed as modified.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[4] Having concluded that the error was not plain, we need not consider the remaining prongs of the plain-error test.

D I S S E N T

ANDERSON, Justice (concurring in part, dissenting in part).

I join in Part II of the court's opinion, which holds that the Minnesota Rules of Evidence apply to *Blakely* court trials. But I disagree with the court's decision in Part III, which holds that the district court's unobjected-to failure to apply the rules of evidence did not constitute an error that was plain. In my view, our analysis in *State v. Rodriguez*, 754 N.W.2d 672 (Minn. 2008), leaves no doubt that the rules of evidence apply to *all* sentencing trials mandated by *Blakely v. Washington*, 542 U.S. 296 (2004). Because the plain error committed in this case impacted Sanchez-Sanchez's substantial rights in a manner that seriously affects the fairness, integrity, and public reputation of judicial proceedings, I would reverse the 240-month sentence and remand for a new *Blakely* trial.

I.

Sanchez-Sanchez did not object to the district court's failure to apply the rules of evidence during his *Blakely* court trial. He has, therefore, forfeited any claim based on the failure to apply those rules unless he can show that there was (1) an error, (2) that was plain, and (3) that affected his substantial rights. *See State v. Kelley*, 855 N.W.2d 269, 278 (Minn. 2014) (explaining that the plain-error doctrine provides a means for appellate courts to remedy forfeited errors). If Sanchez-Sanchez satisfies the first three prongs of the plain-error doctrine, we may correct the forfeited error only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 274. In my view, Sanchez-Sanchez has satisfied the first prong of the plain-error doctrine for the

reasons articulated by the majority. I therefore turn my attention to the second prong of the plain-error doctrine.

## II.

"An error is plain if it is clear or obvious at the time of appeal." *State v. Peltier*, 874 N.W.2d 792, 799 (2016). An error is "clear or obvious" when it "violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Bustos*, 861 N.W.2d 655, 660-61 (Minn. 2015) (quoting *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014)).

In my view, our analysis in *Rodriguez* leaves no doubt that the rules of evidence apply to *all* sentencing trials mandated by *Blakely*.[1] The defendant in *Rodriguez* did not waive his right to have a jury determine the existence of aggravating sentencing factors. 754 N.W.2d at 683. We, therefore, quite naturally referred to the proceedings as a "jury sentencing trial." *Id.* After explaining that the Minnesota Rules of Evidence generally apply "to all actions and proceedings" in the courts of this state, *see* Minn. R. Evid. 1101(a), we considered the issue of whether a jury sentencing trial fell within one of the exceptions set forth in Minn. R. Evid. 1101(b)(3), which states in relevant part that the rules of evidence do not apply in proceedings for sentencing. *Rodriguez*, 754 N.W.2d at 683. We concluded that "[u]nder the *plain* language of Minn. R. Evid. 1101(a), the rules

---

[1] The absence of any doubt distinguishes this case from *State v. Milton*, in which we held that the jury-instruction error was not plain because we had "not yet clearly required district courts to include a specific explanation of the 'intentionally adding' element until today." 831 N.W.2d 789, 807 (Minn. 2012). We acknowledged in *Milton* that our prior case law did not "make clear" that such an explanation was required. *Id.*

of evidence apply in jury sentencing trials, which are not listed as an exception in Minn. R. Evid. 1101(b)." *Id.* (emphasis added). We also noted that, as used in Minn. R. Evid. 1101(b), the word "sentencing" did not contemplate the proceedings mandated by *Blakely* because the rule was "adopted in 1977 long before" the *Blakely* rule was announced. *Rodriguez*, 754 N.W.2d at 684 n.8. Because Minn. R. Evid. 1101(b) makes no reference to "court sentencing trial" or "*Blakely* court trial," our analysis in *Rodriguez* leaves no doubt that the rules of evidence also would apply to a *Blakely* court trial. The district court's failure to apply the rules of evidence clearly and obviously contravened our analysis in *Rodriguez*, and was therefore an error that was plain.

III.

Having concluded that Sanchez-Sanchez has established an error that was plain, I next consider whether the error affected his substantial rights. An error affects a defendant's substantial rights when "the error was prejudicial and affected the outcome of the case." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014) (quoting *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998)). "An error is prejudicial if there is a reasonable likelihood that the error had a significant effect on the proceedings." *Id.*

During the *Blakely* court trial, the State presented its case through a single witness, FBI Special Agent Andrew Mento. Although Mento had some personal knowledge of the investigation, much of his testimony involved "hearsay," which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Such statements generally are inadmissible. Minn. R. Evid. 802. Admittedly, statements

D-3

made by a coconspirator are not considered hearsay when certain requirements are satisfied, including the requirement that the statement be made in the course and furtherance of the conspiracy. Minn. R. Evid. 801(d)(2)(E)(ii). Here, however, many of the coconspirator statements referenced in Agent Mento's testimony occurred *after* their arrest and thus could not be, and were not, made in furtherance of the conspiracy.

In sum, much of the State's evidence would have been inadmissible had the rules of evidence been applied at Sanchez-Sanchez's *Blakely* court trial. Based on my careful review of the record, I conclude that there is a reasonable likelihood that the district court's unobjected-to failure to apply the rules of evidence had a significant effect on the outcome of the proceedings.

IV.

Having concluded that the plain error impacted Sanchez-Sanchez's substantial rights, I next consider whether the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. As we explained in *Bustos*, a plain error affecting a defendant's substantial rights, without more, is insufficient to warrant a new trial. 861 N.W.2d at 663-64 (citing *United States v. Olano*, 507 U.S. 725, 737 (1993)). Concluding that the rules of evidence did not apply to the *Blakely* court trial was no ordinary error. The rules of evidence are designed to ensure that "truth may be ascertained and proceedings justly determined." Minn. R. Evid. 102; *State v. Aubid*, 591 N.W.2d 472, 479 (Minn. 1999). Here, we are not faced with an erroneous application of one of the rules of evidence, but instead an erroneous conclusion that the rules of evidence did not apply to the *Blakely* court trial at all. As illustrated by the 137 months the district court

added to the maximum sentence Sanchez-Sanchez could have received under the sentencing guidelines, the stakes at *Blakely* trials can be very high. If left unchecked, this erroneous conclusion that the rules of evidence do not apply to the *Blakely* court trial would have a substantial and deleterious effect on future trials. We recently reached a similar conclusion in *Bustos*, explaining that

> the district court's errors regarding the proof-beyond-a-reasonable-doubt standard and the past-pattern jury instruction not only significantly affected Bustos's trial, but left unchecked would also have a substantial and deleterious effect on future trials (and, not insignificantly, undercuts the historic standard of proof imposed on the State in criminal trials).

861 N.W.2d at 665 n.7.

For these reasons, I would reverse the sentence and remand to the district court for a new *Blakely* trial. I respectfully dissent from Part III of the court's opinion.


DIETZEN, Justice (dissenting).

I join in the concurrence and dissent of Justice Anderson.