STATE of Minnesota, Respondent,

v.

Steven Douglas STANKE, Appellant.

Nos. A07–0095, A07–0132.

Supreme Court of Minnesota.

May 7, 2009.

Lawrence Hammerling, Chief State Appellate Public Defender, Marie Wolf, Assistant State Public Defender, St. Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant Anoka County Attorney, Anoka, Minnesota, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Appellant Steven Douglas Stanke pleaded guilty to both fleeing a peace officer resulting in death and fleeing a peace officer resulting in great bodily harm. Stanke waived his right to a *Blakely* sentencing jury. The Anoka County District Court found nine aggravating factors and one severe aggravating factor-that the peace officer was particularly vulnerable. The court then sentenced Stanke to more than double the presumptive sentence. The Minnesota Court of Appeals held that the district court erred in finding the severe aggravating factor but upheld the sentence on other grounds. On appeal to our court, Stanke asserts that after *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the court of appeals is not permitted to uphold a greater-than-double-durational sentence on alternative grounds. The State urges us to reject the court of appeals' analysis and uphold the district court's sentence on its original grounds. We conclude that the district court erred in using the peace officer's particular vulnerability to be a severe aggravating factor, but we nevertheless uphold the district court's original sentence on other grounds.

On September 6, 2005, appellant Steven Douglas Stanke, was driving a stolen car on I-35W during rush hour when he saw police officers behind him. Stanke, who was wanted in connection with several burglaries in South Dakota, tried to elude the police by exiting I-35W. When this tactic did not work, he drove back onto I-35W with the police still behind him. A high-speed chase in the southbound lanes of I-35W ensued.

Throughout the chase, Stanke maintained speeds of between 90 and 110 miles per hour. While passing between two trucks, he loaded a syringe with methamphetamine and water and injected the substance into his arm. Stanke was also speaking on a cell phone during the chase. While his hands were otherwise occupied, Stanke steered the car with his knee. The police later learned that because of methamphetamine use Stanke had been awake for approximately two weeks at the time of the chase. At his sentencing hearing, Stanke acknowledged that his conduct during the chase was dangerous to the police and everybody else on I-35W.

Approximately fourteen miles into the chase, Lino Lakes Police Officer Shawn Silvera deployed "stop sticks" [1] in the left lane of southbound I-35W. After Silvera placed the stop sticks across the left lane,

1. "Stop sticks" are tire-deflation devices, used to slow or stop a vehicle.

he positioned himself on or near the shoulder of I–35W as Stanke's car approached. When Stanke approached Silvera, Stanke turned his car to the left and hit Silvera. The force of the collision threw Silvera approximately 310 to 320 feet before his body came to rest in the ditch. After striking Silvera, Stanke struck another car. This collision caused the driver of the other car to suffer significant injury. The police arrested Stanke at the collision site.

Two hours after the collision, the police took a blood sample from Stanke. The subsequent toxicology test indicated that Stanke's blood methamphetamine level was .17 milligrams per liter. At trial, a toxicologist testified that a blood methamphetamine level this high is associated with a person who is abusing methamphetamine. The toxicologist also testified that this blood methamphetamine level would impair a person's reaction time and ability to drive. The toxicologist also agreed with the State that it is "inherently dangerous to have an abusive amount of methamphetamine in [one's] system and operate a motor vehicle."

On September 11, 2006, Stanke appeared in district court and entered a plea of guilty to fleeing a peace officer resulting in death, for having caused the death of Officer Silvera. Minn.Stat. § 609.487, subd. 4(a) (2008). He also pleaded guilty to fleeing a peace officer resulting in great bodily harm, involving the collision that caused injuries to the driver of the other car. *Id.* subd. 4(b) (2008). Pursuant to his plea agreement, an indictment for first-degree murder was dismissed.

Stanke waived his right to a *Blakely* sentencing jury and agreed that aggravating factors existed that would justify a double upward durational departure to at least 432 months for the resulting-in-death charge. In his guilty plea, Stanke acknowledged that he would be sentenced to at least 432 months for fleeing a peace

officer resulting in death and at least 21 months for fleeing a peace officer resulting in great bodily harm. He also agreed that the two sentences would be consecutive, for a total minimum sentence of at least 453 months. The State sought the statutory maximum sentence of 480 month, and Stanke acknowledged that the district court could sentence him to the statutory maximum.

The district court held a sentencing hearing on the aggravating factors. As a result of the hearing, the court found nine "substantial and compelling" aggravating factors which justified a double durational departure. These factors included: the high speeds at which Stanke drove; that the chase occurred during rush hour; that Stanke had been using methamphetamine for two weeks before the chase and had not slept during that time; that Stanke injected himself with methamphetamine during the chase; that Stanke was talking on a cell phone during the chase; and that Stanke, at some point, was steering the car with his knee. The court also found one "severe aggravating circumstance" that justified sentencing Stanke to the statutory maximum of 480 months—that Officer Silvera was particularly vulnerable. The court then imposed a sentence of 480 months.

Stanke appealed his sentence to the Minnesota Court of Appeals, which affirmed the district court's greater-than-double-durational sentence. *State v. Stanke,* No. A07–0095, A07–0132, 2008 WL 131357 (Minn.App. Jan. 15, 2008). The court of appeals held that the record did not support the district court's finding that Officer Silvera was particularly vulnerable when he was placing stop sticks on the freeway. *Id.* at *3. But the court upheld the district court's sentence because it concluded there were alternative grounds in the record to support the greater-than-

double-durational departure. *Id.* The court stated that the crime committed by Stanke "clearly represented remarkable egregiousness and greater than normal danger to the safety of other people," and held that "the atypical egregiousness of the crime supports a greater-than-double departure." *Id.* We granted Stanke's petition for review.

## I.

■ We first address Stanke's claim that the State is procedurally barred from arguing that the district court was correct in finding that Officer Silvera was particularly vulnerable. Although the State did not raise this issue in either a petition or cross-petition for review, we have the discretion to "permit a respondent, without filing a cross-appeal, to defend a decision or judgment on any ground that the law and record permit that would not expand the relief that has been granted to the respondent." Minn. R.Crim. P. 29.04, subd. 6. Here, the State is defending against Stanke's challenge to the district court's judgment and is not seeking any additional relief. Therefore, we conclude that the issue of whether the district court was correct in finding Officer Silvera was particularly vulnerable is properly before us.[2]

■ We generally review a district court's decision to depart from a presumptive sentence for an abuse of discretion. *Taylor v. State,* 670 N.W.2d 584, 588

(Minn.2003). Reversal is warranted if the reasons given for the departure are improper or inadequate. *Id.* Generally, a victim is considered "particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which is known or should have been known to the offender." Minn. Sent. Guidelines II.D.2.b.(1). The list of aggravating factors included in the sentencing guidelines is nonexclusive, *Id.* II.D.2., and the State argues that it was not improper for the district court to conclude that Officer Silvera was particularly vulnerable.

We have previously recognized that peace officers are "highly vulnerable when engaged in the performance of their duties." *State v. Brown,* 345 N.W.2d 233, 239 (Minn.1984). We do not alter that conclusion today. The legislature has also recognized that peace officers performing their official duties are vulnerable and, in recognizing that vulnerability, has enacted statutes that impose more severe penalties for crimes involving peace officers.[3] But, we have held that it is inappropriate for the court to base "an upward durational departure on factors that the legislature has already taken into account in determining the degree of seriousness of the offense." *State v. Thompson,* 720 N.W.2d 820, 830 (Minn.2006) (citing *State v. Shattuck,* 704 N.W.2d 131, 140 (Minn.2005)).

In this case, the State charged Stanke with fleeing a peace officer resulting in death. Minn.Stat. § 609.487, subd. 4(a).

---

2. On June 19, 2008, Stanke filed a motion with this court to strike Argument 1 (pp. 18–22) from the State's brief with respect to "victim vulnerability." In an order dated July 9, 2008, we deferred consideration of Stanke's motion to strike until consideration of the matter on the merits. Having reviewed and considered Stanke's motion, it is hereby denied.

3. *See, e.g.,* Minn.Stat. § 609.185(a)(4) (2008) (defining first-degree murder to include one

who "causes the death of a peace officer or a guard employed at a Minnesota state or local correctional facility, with intent to effect the death of that person or another, while the peace officer or guard is engaged in the performance of official duties"); Minn.Stat. § 609.221, subd. 2 (2008) (imposing a mandatory minimum sentence for assaulting a peace officer or correctional officer with deadly force, where the same attack on others would not carry a mandatory minimum sentence).

This statute imposes a significantly greater penalty of up to 40 years imprisonment as compared to criminal vehicular homicide, which has a maximum sentence of 10 years. *Compare id., with* Minn.Stat. § 609.21, subd. 1a(a). Minnesota Statutes, section 609.487 also requires the element of the presence of a peace officer performing official duties. Thus, we conclude that the legislature accounted for a peace officer's particular vulnerability when it enacted Minn.Stat. § 609.487 with more severe penalties for the offense of fleeing from a peace officer resulting in death. As a result, a district court is not permitted to rely on the officer's particular vulnerability again by using it as an aggravating factor in sentencing. Therefore we hold that the district court erred in relying on Officer Silvera's particular vulnerability as a severe aggravating circumstance when sentencing Stanke for violating Minn.Stat. § 609.487.

## II.

Having concluded that the district court erred in relying on Officer Silvera's particular vulnerability as a severe aggravating factor, we must determine whether it is necessary to remand this case to the district court for resentencing. In order for the district court to impose a greater-than-double-durational sentence, there must be severe aggravating factors. *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981) (concluding that "generally in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length."). Here the district court determined that the particular vulnerability factor was a severe aggravating factor. The district court did not expressly address whether the remaining nine aggravating factors constituted severe aggravating factors. Before *Blakely*, we would independently review the record for evidence to justify a departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985). If the record contained such evidence, we would affirm the departure. *Id.*

After *Blakely*, we no longer independently review the record for evidence to justify a departure because the issue of whether additional facts exist to support the departure is a question of fact for a *Blakely* jury, unless the defendant has waived his or her right to a *Blakely* jury. *State v. Jones*, 745 N.W.2d 845, 851 (Minn. 2008); Minn. Sent. Guidelines II.D. Instead, when the facts found only support an improper or inadequate reason for departure, we have generally remanded for further proceedings. *Id.*

But under some circumstances we have not remanded for further proceedings. For example, we have affirmed the district court sentence when the facts found support the court-considered alternative reasons for departure. *State v. Thompson*, 720 N.W.2d 820 (Minn.2006); *State v. Rodriguez*, 754 N.W.2d 672 (Minn.2008). In deciding whether to affirm or remand, we must determine whether the district court would have imposed the same sentence absent reliance upon the improper aggravating factor. *Rodriguez*, 754 N.W.2d at 682. In doing so, we consider the weight given to the invalid factor and whether any remaining factors found by the court independently justify the departure. *Id.* Only if we conclude that the district court would have imposed the same sentence absent the improper aggravating factor will we affirm the sentence imposed by the court.

Here, Stanke waived his right to have a *Blakely* sentencing jury determine the existence of aggravating factors and admitted to the facts underlying the aggravating factors listed by the district court in its written findings. Although the district court did not consider whether the remaining nine aggravating factors constituted severe aggravating factors, we conclude

that the facts of this case are atypical and particularly egregious. Thus, we are convinced beyond a reasonable doubt that if we were to remand to the district court, the court would determine that at least one if not more of the remaining nine factors was a severe aggravating factor warranting the imposition of a sentence that exceeded the double-durational-departure limit we articulated in *Evans.* This is not a typical "fleeing" case. Stanke admitted that he was not only driving at high speeds, he was doing so during rush hour while talking on his cell phone, injecting himself with methamphetamine, and steering with his knee. He had also not slept for approximately two weeks due to drug use.

Under different circumstances, we believe the better course of action would be to remand to the district court. But our review of the court's sentencing transcript, the facts admitted by Stanke, and the district court's memorandum identifying the nine remaining aggravating factors leads us to conclude that a remand is not necessary here. At the sentencing hearing, after listening to the victim impact statement, hearing from the defendant, and identifying all of the possible aggravating sentencing factors, the court stated:

> We do not, as a society, wish to see our police officers die in the line of duty. We do not expect that they will have to make that ultimate sacrifice of life to protect the public safety they are sworn to defend. When it does happen, the day is so severe as to call for the maximum possible consequences under the law.

Although Officer Silvera's particular vulnerability as a peace officer cannot be used as an aggravating factor, the circumstances surrounding his death were properly considered by the district court. The admitted facts are so extreme that we are convinced that they support a greater-than-double-durational departure and that the absence of the aggravating factor of Officer Silvera's particular vulnerability would not change the court's sentence on remand. Therefore, to remand this case to the district court would not be a prudent use of the time and resources of the judicial system. Thus, given the atypical and particularly egregious facts of this case, we affirm the district court's sentence.

Affirmed.