*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2185**

State of Minnesota,
Respondent,

vs.

Larry Darnell Lakes,
Appellant.

**Filed August 10, 2015
Reversed and remanded
Johnson, Judge**

Ramsey County District Court
File No. 72-CR-12-2304

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Peterson, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Ramsey County jury found Larry Darnell Lakes guilty of three offenses based on evidence that he induced a woman to engage in prostitution. The district court

sentenced Lakes to 180 months of imprisonment, which is an upward departure from the presumptive guidelines range of 65 to 91 months, based on the jury's finding that Lakes provided the victim with heroin as a means of inducing her to engage in prostitution. We conclude that the district court erred by departing upward from the presumptive guidelines range because Lakes's conduct was not particularly serious in light of the offense for which he was convicted and sentenced. Therefore, we reverse and remand for resentencing.

## FACTS

Lakes's convictions are based on evidence that he held a 22-year-old woman, R.L., against her will for three weeks and forced her to engage in prostitution. The scheme began when Lakes called R.L. three times and asked her to "test" a new batch of heroin. At the time, Lakes knew that R.L. was trying to recover from an addiction to heroin. R.L. declined twice but then relented. She used heroin over the next three days, during which time Lakes convinced her to pose for photographs in lingerie. Lakes used the photographs in an online advertisement for prostitution. When Lakes received calls from men responding to the advertisement, he facilitated meetings between the men and R.L. Lakes told R.L. to perform sexual acts on the men, and she complied. The men gave money to R.L., and Lakes took the money from her. After the first three days, Lakes did not allow R.L. to use heroin because he did not want her "nodding off" or "look[ing] too high" while engaging in prostitution. Lakes accommodated R.L.'s addiction by giving her rides to a methadone clinic on a daily basis. She eventually

2

escaped by using her cell phone, which Lakes usually kept in his possession, to covertly send a message to a friend, who contacted a member of her family, who contacted police.

In March 2012, the state charged Lakes with three offenses: (1) solicitation to practice prostitution, in violation of Minn. Stat. § 609.322, subd. 1a(1) (2010); (2) promotion of prostitution, in violation of Minn. Stat. § 609.322, subd.1a(2); and (3) receiving profit derived from prostitution, in violation of Minn. Stat. § 609.322, subd. 1a(3). The case went to trial in January 2013. The jury found Lakes guilty of all three charges. In a special verdict form, the jury also found that Lakes "provide[d] [R.L.] with illegal drugs to assist in the inducement, solicitation, promotion of or receiving profits derived from prostitution."

At sentencing, the state urged the district court to impose a sentence of 180 months of imprisonment, which the state deemed to be the top of the presumptive range in light of Lakes's criminal-history score. The prosecutor expressly stated that the state was not seeking an upward departure, even though the jury had found an aggravating factor. The district court imposed a 180-month sentence on count 2 and did not sentence Lakes with respect to counts 1 and 3. Lakes appealed, raising multiple issues. This court affirmed Lakes's conviction, reversed his sentence on the ground that his criminal-history score had been miscalculated, and remanded for resentencing. *State v. Lakes*, No. A13-0981, 2014 WL 2013386, at *1 (Minn. App. May 19, 2014).

At Lakes's resentencing hearing, the parties agreed that the presumptive guidelines range is 65 to 91 months of imprisonment. The state urged the district court to depart upward by imposing a 180-month sentence based on the jury's finding of an

aggravating factor. The prosecutor argued that an upward departure is justified by the fact that Lakes knew that R.L. was trying to overcome an addiction to heroin when he gave her heroin to induce her to engage in prostitution. Lakes's attorney responded by arguing, in part, that "prostitution and heroin or drug addiction go hand-in-hand." The district court granted the state's request for an upward departure and sentenced Lakes to 180 months of imprisonment. The district court explained that the departure is based on the jury's finding "that the Defendant supplied the victim with illegal drugs to induce her to practice prostitution." Lakes appeals.

## D E C I S I O N

### I. Law of Case

Before considering Lakes's challenge to the district court's upward departure, we must consider the state's responsive argument. The state argues that we should not consider Lakes's challenge to the upward departure because this court's previous opinion is the "law of the case" with respect to whether the district court may base an upward departure on the jury's finding of an aggravating factor.

"The law-of-the-case doctrine is a rule of practice that once an issue is considered and adjudicated, that issue should not be reexamined in that court or any lower court throughout the case." *State v. Dahlin*, 753 N.W.2d 300, 305 n.7 (Minn. 2008) (quotation omitted). "The doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *State v. Miller*, 849 N.W.2d 94, 98 (Minn. App. 2014) (emphasis omitted) (quotations omitted). The doctrine does not apply, however, if "the issue has not yet been

4

litigated or decided at trial or on appeal." *In re Welfare of M.D.O.*, 462 N.W.2d 370, 376 (Minn. 1990).

When Lakes was sentenced for the first time, the state did not seek an upward departure, and the district court did not impose an upward departure. Accordingly, there was no upward departure for this court to review at that time. Lakes nonetheless argued that, if resentencing were necessary after the appeal, the district court should not be permitted on remand to consider the aggravating factor on the ground that it would be based on the same conduct that is the basis of the charged offense. Although that issue was not necessary to the resolution of Lakes's appeal, this court nonetheless addressed the issue and rejected Lakes's argument. *See Lakes*, 2014 WL 2013386, at *6 (citing *State v. Osborne*, 715 N.W.2d 436, 446 (Minn. 2006)). In our opinion, we reasoned that the aggravating factor was not based on the conduct for which Lakes was convicted because his "convictions do not contain an element of providing illegal drugs to a victim of prostitution." *Id.* In concluding that portion of the opinion, we stated, "The district court may consider the aggravating factor on remand." *Id.*

The issue that Lakes raised in his first appeal is different from the issues he raises in this appeal. Our opinion in the first appeal must be read and understood in light of the issue that was raised in the first appeal. Accordingly, that opinion must be understood to say only that consideration of the aggravating factor would not be improper on the ground that it would be based on the same conduct that is the basis of the offense of conviction. The court's resolution of that issue does not foreclose the argument that the aggravating factor actually relied on by the district court is improper for a different

reason, *i.e.*, because the conduct on which it is based is not particularly serious in light of the offense of which he was convicted and sentenced. Because Lakes raised different issues concerning the aggravating factor in his two appeals, the issue he raises in the present appeal "has not yet been litigated or decided" by this court. *See M.D.O.*, 462 N.W.2d at 376. Thus, the law-of-the-case doctrine does not apply.

## II. Upward Departure

Lakes argues that the district court erred by departing upward from the presumptive guidelines range based on the jury's finding that he provided heroin to R.L. to induce her to engage in prostitution. With the assistance of counsel, Lakes argues that the upward departure is improper for two reasons. First, he contends that providing illegal drugs to another person in a prostitution scheme is not a proper reason for an upward departure because his conduct was not sufficiently serious in light of the offenses of which he was convicted and sentenced. Second, he contends that the factual basis of the upward departure is conduct for which he could have been charged but was not charged. Lakes has filed a *pro se* supplemental brief, which essentially parallels the first argument presented by his appellate counsel. We begin by analyzing Lakes's first argument.

## A.

"The purpose of the sentencing guidelines is to establish rational and consistent sentencing standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." Minn. Sent. Guidelines 1.

(Supp. 2011). In this way, the sentencing guidelines "promote uniformity, proportionality, and predictability." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). To ensure that these purposes are fulfilled, "departures from the presumptive guidelines sentence are discouraged." *State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008). Accordingly, a district court must impose a presumptive sentence specified in the sentencing guidelines unless there are "identifiable, substantial, and compelling circumstances" to warrant an upward departure from the presumptive sentence. Minn. Sent. Guidelines 2.D. (Supp. 2011). "Substantial and compelling circumstances are those showing that the defendant's conduct was significantly more or less serious than that typically involved in the commission of the offense in question." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009) (quotation omitted). A district court may base an upward departure on one or more of the aggravating factors in the statutes and the sentencing guidelines, although the district court is not limited to those factors. *See* Minn. Stat. § 244.10, subd. 5a(c) (2010); Minn. Sent. Guidelines 2.D.2.b. (Supp. 2011).

A district court "has broad discretion to depart . . . if aggravating or mitigating circumstances are present; if aggravating or mitigating circumstances are not present, the trial court has no discretion to depart." *State v. Best*, 449 N.W.2d 426, 427 (Minn. 1989) (emphasis omitted); *see also State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985). This court applies a *de novo* standard of review to the question whether a particular reason for an upward departure is a valid reason. *Jackson*, 749 N.W.2d at 357; *Dillon v. State*, 781 N.W.2d 588, 598 (Minn. App. 2010), *review denied* (Minn. July 20, 2010); *State v. Grampre*, 766 N.W.2d 347, 350 (Minn. App. 2009), *review denied* (Minn. Aug. 26,

7

2009).  If the reason for the departure is a valid reason, we apply an abuse-of-discretion standard of review to a district court's decision whether to depart.  *Jackson*, 749 N.W.2d at 356-57.  But if the reason for the departure is not a valid reason, the district court has no discretion to depart.  *Best*, 449 N.W.2d at 427; *Peake*, 366 N.W.2d at 301.

**B.**

We look to supreme court caselaw not only for the general principles mentioned above but also for guidance in applying those principles in order to discern when the relevant circumstances are substantial and compelling so as to justify an upward departure.

For example, in *Taylor v. State*, 670 N.W.2d 584 (Minn. 2003), the appellant was convicted of first-degree criminal sexual conduct based on evidence that he sexually abused a three-year-old child who was enrolled in his wife's home-based day-care program.  *Id.* at 585.  The district court imposed an upward departure based on aggravating factors, including the victim's vulnerability due to age and the defendant's position of authority and trust.  *Id.* at 586.  The supreme court reversed the upward departure, reasoning, in part, that "although Taylor's conduct was reprehensible and regrettable, we cannot say that it was an atypical first-degree offense warranting a durational departure from the statutory presumptive 12-year term." *Id.* at 589.

Similarly, in *State v. Jones*, 745 N.W.2d 845 (Minn. 2008), the appellant was convicted of third-degree criminal sexual conduct based on evidence that he raped a 16-year-old girl who was dying of a drug overdose.  *Id.* at 847.  The district court imposed an upward departure based on the aggravating factors that he sexually assaulted a

8

physically helpless victim and failed to seek medical help for her. *State v. Jones*, 733 N.W.2d 160, 165 (Minn. App. 2007), *rev'd*, 745 N.W.2d 845 (Minn. 2008). The supreme court reversed on the ground that, among other things, the facts supporting the departure "did not demonstrate that Jones' conduct in the sexual conduct crime was significantly more serious than that typically involved in the commission of that crime." *Jones*, 745 N.W.2d at 849-50 (quotations omitted).

Likewise, in *State v. Thao*, 649 N.W.2d 414 (Minn. 2002), the appellant was convicted of second-degree murder while committing a drive-by shooting for the benefit of a gang based on evidence that he fired eight shots from a vehicle toward a basketball court in a busy public park, killing one basketball player. *Id.* at 417, 419. The district court imposed an upward departure based on the aggravating factors that the appellant fired several shots, that he shot into a public park, and that multiple persons were in the park. *Id.* at 417. The supreme court reversed, reasoning that although the appellant's crime was "heinous," his conduct was not "significantly more serious than a typical drive-by shooting." *Id.* at 424 (quotation omitted).

Conversely, an upward departure is justified if the offender's conduct is significantly more serious than most cases of that type. For example, in *State v. Stanke*, 764 N.W.2d 824 (Minn. 2009), the supreme court affirmed an upward departure for an offender convicted of fleeing a police officer resulting in death because the offender's high-speed chase involved a number of unusual factors. *Id.* at 826, 829. The circumstances were substantial and compelling because the high-speed chase occurred

9

during rush hour and the appellant injected methamphetamine, talked on a cell phone, and steered the car with his knee during the chase. *Id.* at 829.

These cases illustrate that determining whether an upward departure is justified often is made difficult by the fact that many forms of criminal conduct are, by nature, appalling. *See Jones*, 745 N.W.2d at 850; *Taylor*, 670 N.W.2d at 589; *Thao*, 649 N.W.2d at 424. These cases also illustrate that the supreme court, in determining whether an upward departure is warranted in a particular case, gives strong deference to the central purposes of the sentencing guidelines. *See Jones*, 745 N.W.2d at 850; *Taylor*, 670 N.W.2d at 589; *Thao*, 649 N.W.2d at 424. In this particular context, the supreme court has given a relatively broad meaning to the term "typical" when seeking to determine whether an appellant's conduct was "significantly more . . . serious than that typically involved in the commission of the offense in question." *Edwards*, 774 N.W.2d at 601. In this context, "typical" conduct includes more than just the conduct that is minimally required for a conviction; it also extends to conduct that is "much more extreme than the minimum conduct required to violate the applicable statute." *State v. Leja*, 684 N.W.2d 442, 450 (Minn. 2004). Indeed, the caselaw illustrates that conduct may be deemed "typical" even if it is not the usual way, or the most common way, in which a particular offense is committed. *See Jones*, 745 N.W.2d at 850; *Taylor*, 670 N.W.2d at 589; *Thao*, 649 N.W.2d at 424.[1]

---

[1]In his brief, Lakes provides simple statistics to illustrate the limited role of upward departures under the sentencing guidelines in Minnesota. He states that, in 2013, an upward durational departure based on an aggravating factor was imposed in only 2.5% of sentences. He further states that upward departures were imposed most frequently in

10

We also look to supreme court caselaw to determine how an appellate court should determine whether the conduct underlying an upward departure is significantly more serious than the conduct typically involved in a particular offense. Our review of the relevant caselaw reveals that the supreme court usually relies on its "collective experience" in reviewing numerous criminal appeals. *See, e.g.*, *State v. Rourke*, 773 N.W.2d 913, 922-23 (Minn. 2009); *see also State v. Yaritz*, 791 N.W.2d 138, 150 (Minn. App. 2010) (relying on collective experience to determine whether aggravating factor was justified). The supreme court sometimes does so by citing to opinions in other cases and by making comparisons between the relevant facts of each case. For example, in *Tucker v. State*, 799 N.W.2d 583 (Minn. 2011), the supreme court concluded that the appellant did not engage in conduct more serious than a typical second-degree unintentional felony murder offense by fleeing the scene and abandoning the victim's body. *Id.* at 586-88. In doing so, the supreme court cited three cases in which a person engaged in the same type of conduct and was charged with the same offense but did *not* receive an upward departure. *Id.* at 587 (citing *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. July 20, 2010); *State v. Lory*, 559 N.W.2d 425, 427 (Minn. App. 1997), *review denied* (Minn. Apr. 15, 1997); *State v. Lohmeier*, 390 N.W.2d 882, 884 (Minn. App. 1986), *review denied* (Minn. Oct. 29, 1986)); *see also State v. Holmes*, 437 N.W.2d 58, 59 (Minn. 1989).

---

cases of second-degree murder, for which an upward durational departure was imposed in 14% of sentences. *See* Minn. Sent. Guidelines Comm'n, *2013 Sentencing Practices: Annual Summary Statistics for Felony Offenders* 29, 32 (2014), http://mn.gov/sentencing/reports.

## C.

In light of the above-described supreme court caselaw, we must attempt to discern whether the district court's reason for departure is based on substantial and compelling circumstances demonstrating that Lakes's conduct was significantly more serious than that typically involved in the commission of the crime of promoting prostitution. *See Jones*, 745 N.W.2d at 848. We note that the offense for which Lakes was sentenced is not the offense of prostitution itself, an offense with a more limited statutory definition. *See* Minn. Stat. § 609.324 (2010); *see also* Minn. Stat. § 609.321, subd. 9 (2010). Lakes was sentenced for the offense of promoting prostitution "while acting other than as a prostitute or patron." *See* Minn. Stat. § 609.322, subd. 1a.

The information available to this court reveals that providing illegal drugs to a person to induce that person to engage in prostitution is, regrettably, not uncommon in the promotion of prostitution. This court's collective experience includes cases in which an appellant gave illegal drugs to a woman to induce her to engage in prostitution but apparently was *not* sentenced to an upward departure because of such conduct. *See Mitchell v. Smith*, 817 N.W.2d 742, 745-46 (Minn. App. 2012) (noting appellant's prior conviction of solicitation of a minor to practice prostitution for forcing minor females into prostitution with drugs and other means); *State v. Smith*, 376 N.W.2d 537, 537-38 (Minn. App. 1985) (describing how appellant, convicted of inducement to practice prostitution, coerced minor females into prostitution by giving them cocaine and suggesting they earn money to buy more cocaine); *State v. Chang*, No. A03-1802, 2005 WL 353987, at *3 (Minn. App. Feb. 15, 2005) (describing how appellant, convicted of

12

criminal sexual conduct, gave crystal meth to minor females and forced them to engage in prostitution), *review denied* (Minn. Apr. 27, 2005).[2]

Courts in other jurisdictions also have experience with the interrelationship between prostitution and illegal drugs, and this caselaw does not indicate that upward departures or enhancements are imposed because an appellant gave illegal drugs to another person to induce her to engage in prostitution. *See, e.g.*, *United States v. Kizer*, 517 F. App'x 415, 416 (6th Cir. 2013) (describing how appellant "enticed an 18-year-old crack addict . . . into a world of prostitution with promises to feed her drug habit"); *United States v. Pipkins*, 378 F.3d 1281, 1293 (11th Cir. 2004) (describing how appellant "purchased marijuana and powder cocaine from [drug dealer] for his prostitutes, using the drugs as a reward or as a lure for other juvenile females"), *judgment vacated and remanded for reconsideration*, 544 U.S. 902, 125 S. Ct. 1617 (2005), *opinion reinstated*, 412 F.3d 1251 (11th Cir. 2005); *United States v. Campbell*, 49 F.3d 1079, 1084 (5th Cir. 1995) (describing how appellant lured victims into prostitution using drugs as "'carrot' to induce or entice [victims] into prostituting for him"); *People v. Purvis*, No. B227423, 2011 WL 6062020, at *4 (Cal. Ct. App. Dec. 7, 2011) (noting witness's observation that "[p]imps frequently lure girls as young as fourteen into prostitution, enticing them with

---

[2]The unpublished opinions of this court are, of course, not precedential. Minn. Stat. § 480A.08, subd. 3(c) (2012); *Vlahos v. R & I Constr., Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004); *State v. Porte*, 832 N.W.2d 303, 312 n.1 (Minn. App. 2013). We do not cite *Chang* because of any rule of law that may be derived from the opinion. Rather, we cite it as an example of a case in which the district court did not impose an upward departure based on the fact that the appellant used illegal drugs to induce others to engage in prostitution using illegal drugs. We cite unpublished opinions of other courts for this same purpose.

13

drugs, alcohol, and gifts"); *People v. Cardenas*, 338 P.3d 430, 441 (Colo. App. 2014) (Berger, J., specially concurring) (noting expert testimony that sex traffickers often exploit young victims who are addicted to drugs); *State v. Williams*, 315 N.W.2d 45, 51 (Iowa 1982) (describing evidence that appellant told victim "he wanted her to work for him as a prostitute" and "would supply her with drugs"); *State v. Thornton*, 339 P.3d 112, 115 (Utah Ct. App. 2014) (describing how appellant exploited victim by giving her crack cocaine and forcing her into prostitution to pay for it).

Furthermore, secondary authorities confirm the judicial experience by describing how persons who promote prostitution exploit their victims with illegal drugs. *See* Michael J. Frank & G. Zachary Terwilliger, *Gang-Controlled Sex Trafficking*, 3 Va. J. Crim. L. 342, 384 (2015) ("Beyond merely numbing victims with drugs, pimps and gangs have been known to target women with drug addictions or victims who can likely be turned into addicts for recruitment."); Andrea L. Johnson, Note, *A Perfect Storm: The U.S. Anti-Trafficking Regime's Failure to Stop the Sex Trafficking of American Indian Women and Girls*, 43 Colum. Hum. Rts. L. Rev. 617, 629 & n.63 (2012) (noting reports of Minnesota Department of Public Safety and two nonprofit organizations that "pimps" often provide victims with free drugs to "get them addicted, and then begin prostituting them").

In light of the information summarized above, it appears that providing illegal drugs to a woman to induce her to engage in prostitution is, sadly, not uncommon among persons who commit the offense of promotion of prostitution. *See United States v. Williams*, 291 F.3d 1190, 1196 (9th Cir. 2002) (reversing enhancement of sentence

imposed on appellant convicted under Mann Act, reasoning that exploitation of chemical dependence is "typical" in prostitution "and, without more, cannot support" enhancement for victim vulnerability), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007).

The conduct for which Lakes was given an upward departure is reprehensible, but it is not atypical of the unfortunate circumstances that commonly accompany the promotion of prostitution. Lakes's conduct is not an extreme example of the conduct that promoters of prostitution engage in to secure a victim's participation in a prostitution scheme. It is conceivable that another person who commits the offense of promoting prostitution might provide illegal drugs as a means of inducing compliance with a prostitution scheme in a way that is significantly more serious than the typical scheme and, thus, deserving of an upward departure. But the facts of this case make it not atypical. Thus, in light of the applicable caselaw, we are compelled to conclude that the district court did not have discretion to impose an upward departure based solely on the fact that Lakes provided heroin to R.L. to induce her to engage in prostitution. Having resolved Lakes's first argument in his favor, we need not address his second argument.

**Reversed and remanded.**