*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1891**

State of Minnesota,
Respondent,

vs.

Benjamin Paul Adams,
Appellant.

**Filed November 2, 2015
Affirmed in part, reversed in part, remanded
Halbrooks, Judge**

Anoka County District Court
File No. 02-CR-13-7233

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Kelsey R. Kelley, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant was convicted of kidnapping, second-degree assault, and terroristic

threats. After returning its guilty verdicts, the jury considered special interrogatories for

purposes of the state's motion for an aggravated sentence. Based on the jury's responses, the district court imposed (1) a double upward-durational departure of 210 months in prison for kidnapping based on particular cruelty, (2) a consecutive sentence of 21 months for second-degree assault, and (3) a concurrent sentence of 24 months for terroristic threats.

Appellant challenges his convictions, arguing that the district court erroneously denied his request for an in camera review of the victim's intake-assessment interview taken at an emergency shelter. Appellant also raises several challenges to his sentences. Because appellant has not demonstrated that the district court abused its discretion by denying an in camera review, we affirm the convictions. Because we are not persuaded that there was any error in imposing a double upward departure for kidnapping, we affirm the 210-month sentence. But because the district court erred in imposing a separate sentence for terroristic threats and a consecutive sentence for second-degree assault, we reverse in part and remand for resentencing.

**FACTS**

Appellant Benjamin Paul Adams's convictions arise out of events that occurred on October 20 and 21, 2013. According to trial testimony, K.T. and appellant had been involved in a volatile relationship for approximately five years. K.T. testified that in September 2013, she installed TiSPY, a spyware application, on her phone at appellant's direction so that he could monitor her activities. About two weeks before the offense date, appellant heard whispering through the phone speaker and noticed that the GPS component of TiSPY placed K.T. at a hotel located next to her work. Appellant

2

suspected that K.T. was cheating on him. Appellant told K.T. that he wanted her to stay with him so they could talk about what he heard. He picked K.T. up at her residence and brought her to his home, which was in his automotive customizing shop. The shop had surveillance cameras, and most of the events of October 20 and 21 were visually and audibly recorded and played for the jury while K.T. described what occurred.

K.T. testified at trial that on the evening of October 20, appellant forced her to listen to the recordings on the computer and explain what he was hearing. Appellant thought he heard K.T. moan, although K.T. told appellant it was the TV and her snoring. He demanded that she provide him with specific times when she masturbated so that he could compare them with the time the GPS placed her at the hotel. Appellant became upset because he did not think K.T. was taking him seriously, demanded to know who she was sleeping with, and threatened to kill K.T. and himself if she did not provide answers.

Appellant choked K.T., punched her in the face and broke her nose, smothered her, hit her in the head with upholstery scissors, kicked her in the stomach, and banged her head on the floor. Appellant also threatened to stab her with the upholstery scissors and to tie her up and beat her until she died. At one point appellant held onto K.T.'s bra strap like a leash while he had her lock the door because he thought he heard the police. K.T. acknowledged that this may have provided her with an opportunity to escape, but that she was too afraid. Although K.T. told police that appellant cut her wrists, she later admitted cutting her own wrists with a razor blade so she would not have to endure the

3

assault anymore. K.T. explained that, due to surveillance-camera placement, the wrist-cutting and scissor-hitting incidents were not visible.

The assault lasted several hours, continuing into the early morning of October 21. K.T. eventually escaped by telling appellant that she heard the police in the back of the shop, and appellant left her alone while he went to check. K.T. ran to a nearby church, and appellant followed her. "[She] grabbed onto a street pole and wrapped [her] arms and legs around it." Appellant tried to remove her from the pole and told her to come back with him because he loved her. Appellant eventually left, and K.T. ran down the middle of a highway waving her arms and attracting the attention of two men who called the police. K.T. was treated for a broken nose, a bruised kidney, blood in her urine, bruising, and pain. The cuts on her wrists were also stitched. After the incident, police referred K.T. to Alexandra House, an emergency shelter for victims of domestic and sexual abuse. K.T. also testified at trial about prior instances when appellant assaulted her, but stated that the October 21 incident "[was] nothing compared to any other time he's ever assaulted [me], ever."

Appellant was charged with attempted first-degree murder, kidnapping, several counts of assault, and terroristic threats. He waived his right to testify at trial. The jury acquitted him of the attempted-murder counts but convicted him of the remaining counts. This appeal follows.

DECISION

Appellant argues that the district court abused its discretion by denying his request for an in camera review of K.T.'s intake-assessment interview conducted at Alexandra House. K.T.'s intake-assessment interview was in the possession of a third party, not a governmental agency, and not in the possession or control of the prosecutor, prosecution staff, or any others who investigated, evaluated, or reported to the prosecutor's office. *See* Minn. R. Crim. P. 9.01, subds. 1, 1a(1), 2. The intake-assessment interview is also subject to a statutory privilege protecting domestic-abuse advocates from being compelled to disclose information received from a victim without the victim's consent or court order. Minn. Stat. § 595.02, subd. 1(l) (2014). The district court considered the factors in section 595.02, subdivision 1(l), and "fail[ed] to see how disclosing or requiring the disclosure of any statement that [K.T.] made to Alexandra House outweighs any interest in not disclosing it." The district court also concluded, because "[w]e don't know if it's going to be consistent, we don't know if it's going to be inconsistent . . . this request fails in that there's been no plausible showing that it's material and favorable to [his] case."

The district court has "wide discretion in its discovery and evidentiary rulings." *State v. Wildenberg*, 573 N.W.2d 692, 696 (Minn. 1998). But the district court's discretion is limited by the defendant's constitutional rights and must not conflict with those constitutional guarantees. *Id.* "On appeal, we review the limits placed by the

district court on the release and use of protected records for an abuse of discretion." *State v. Hokanson*, 821 N.W.2d 340, 349 (Minn. 2012).

"There is no general constitutional right to discovery in a criminal case . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977). Discovery in criminal cases is governed by the criminal rules and is more limited than in civil cases. *State v. Deal*, 740 N.W.2d 755, 760-61, 763-64 (Minn. 2007). Consistent with constitutional requirements, the Minnesota Rules of Criminal Procedure provide for disclosure without court order of certain "matters within the prosecutor's possession or control": names and addresses of witnesses and other persons with information relating to the case; written or recorded statements; documents and tangible objects; reports of examinations and tests; criminal records of defendant and defense witnesses; exculpatory information; and evidence relating to aggravated sentences. Minn. R. Crim. P. 9.01, subd. 1. The rules also provide for a defendant to seek discretionary disclosure by court order, Minn. R. Crim. P. 9.01, subd. 2, or by subpoena, Minn. R. Crim. P. 22.01, subd. 2. *State v. Hummel*, 483 N.W.2d 68, 71 (Minn. 1992). But these rules do not permit the defendant to have unfettered access to materials protected by the Minnesota Government Data Practices Act or by other legislation. *See Hokanson*, 821 N.W.2d at 349.

When a defendant seeks access to material that is private and protected from disclosure, such as the statutorily protected intake assessment in this case, the district court conducts an in camera review of the confidential records to determine if the records contain "relevant evidence that might help in his defense." *State v. Paradee*, 403 N.W.2d 640, 642 (Minn. 1987). But a criminal defendant does not have a constitutional right to

have the district court review confidential material to determine if anything is discoverable. *See Hummel*, 483 N.W.2d at 72. The defendant "must make some plausible showing that the information sought would be both material and favorable to his defense." *Id*. (quotations omitted).

Based on our review of the record evidence, we conclude that the district court did not abuse its discretion in denying an in camera review. Appellant did not make a plausible showing that the intake-assessment interview would be material and favorable to his defense. Nothing in the record indicates that K.T. had ever made false statements concerning appellant's threats to kill her and to stab her with the scissors, and these threats were recorded by the surveillance video and played for the jury. Because the district court did not abuse its discretion in denying an in camera review, we do not consider if the district court should have ordered disclosure under section 595.02, subdivision 1(l). We affirm the district court on this issue.

## II.

Appellant asserts that the district court erred by imposing separate sentences for kidnapping, second-degree assault, and terroristic threats because all three crimes were committed during a single behavioral incident. "[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." Minn. Stat. § 609.035, subd. 1 (2012). Additionally, a defendant "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04 (2012). But there is an exception to these provisions.

7

"Notwithstanding section 609.04, a prosecution for or conviction of the crime of kidnapping is not a bar to conviction of or punishment for any other crime committed during the time of the kidnapping." Minn. Stat. § 609.251 (2012). When the facts are not in dispute, the question of whether multiple offenses are part of a single behavioral incident is a question of law that is reviewed de novo on appeal. *State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012).

Appellant argues that section 609.251 permits separate convictions and sentences for kidnapping and only one other offense, not for all other offenses committed as part of the same behavioral incident as the kidnapping. The state agrees. "[I]f, as occurred in this case, a person commits a kidnapping, the person generally may be punished both for the kidnapping and for the most serious crime committed during the course of the kidnapping." *State v. Bookwalter*, 541 N.W.2d 290, 294 (Minn. 1995). Because appellant can only be sentenced for kidnapping and the most serious crime committed during the course of the kidnapping, which the parties agree is second-degree assault, *State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006), we remand to the district court to vacate the sentence for terroristic threats, *State v. Jones*, 848 N.W.2d 528, 538 (Minn. 2014).

**III.**

The state gave notice that it was seeking an aggravated sentencing departure on the grounds of particular cruelty, but did not give notice as to which offense was committed with particular cruelty. Appellant objected to the jury instructions because

8

they did not require the jury to consider offense-specific aggravating factors. The district court overruled the objection.

Appellant argues that the jury instructions violated his Sixth Amendment right to a jury trial. *State v. Shattuck*, 704 N.W.2d 131, 135-36 (Minn. 2005) (discussing Sixth Amendment requirement that any fact increasing maximum sentence authorized by guilty plea or jury verdict must be admitted by defendant or proved to jury beyond reasonable doubt). Because this issue involves interpretation of constitutional law, our review is de novo. *Id.* at 135.

It is well settled that the reasons for departure must relate to the offense being sentenced, and the state must establish that the offense being sentenced was committed in a particularly serious way. *See State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009). In making this determination, the district court must avoid "redundant enhancements." *State v. Jones*, 745 N.W.2d 845, 849 (Minn. 2008). For example, the district court cannot use: reasons that are elements of the crime being sentenced; facts underlying separate offenses, which includes uncharged or dismissed offenses; or "conduct underlying an offense of which the defendant was acquitted." *Id.*; *see also Edwards*, 774 N.W.2d at 602 (articulating principles to assist in determining what facts are "available" for departure). Additionally, the district court may not base an upward departure on facts contemplated by the legislature in setting punishment for the offense being sentenced. *Edwards*, 774 N.W.2d at 602 (citing *State v. Stanke*, 764 N.W.2d 824, 827-28 (Minn. 2009) (holding that because the 40-year sentence for fleeing officer resulting in death

contemplated vulnerability of officer, it was not available as an aggravating factor in sentencing)).

But when a defendant is convicted of multiple offenses arising out of a single behavioral incident, the district court may use "overlapping" facts to depart "if those facts show that the defendant committed the offense being sentenced in a particularly serious way." *Id.* at 604; *see also* Minn. Stat. § 244.10, subd. 5a(b) (2014) ("Notwithstanding section 609.04 or 609.035, or other law to the contrary, when a court sentences an offender for a felony conviction, the court may order an aggravated sentence beyond the range specified in the sentencing guidelines grid based on any aggravating factor arising from the same course of conduct.").[1]  We note that the multiple sentences at issue in *Edwards* were permitted under the multiple-victim exception to section 609.035. *See Edwards*, 774 N.W.2d at 605; *see also State v. Marquardt*, 294 N.W.2d 849, 850-51 (Minn. 1980) (permitting one sentence per victim in multiple-victim cases "so long as the multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct").  Like the multiple-victim exception, separate sentences are permitted for kidnapping and "any other crime committed during the time of the kidnapping." Minn. Stat. § 609.251.  Because *Edwards* and section 244.10, subdivision 5a(b), permit the

---

[1] This subdivision was effective August 1, 2009, and applies prospectively. 2009 Minn. Laws ch. 59, art. 5, § 8, at 365-67.  In *Edwards*, the supreme court noted that the legislature "clarified the extent to which Minn. Stat. § 609.035 limits a district court's ability to impose an upward departure." 774 N.W.2d at 607 n.10.  The supreme court did not apply this statute because it was enacted after the offense in *Edwards* was committed, but noted that the holding "is consistent with this statutory clarification because it allows a district court to consider overlapping facts arising out of a single behavioral incident as a basis for an upward departure when a defendant is sentenced for several offenses involving multiple victims." *Id.*

district court to use "overlapping" facts to depart when the defendant is convicted of multiple offenses for the same course of conduct, appellant has not demonstrated that his constitutional rights were violated by the district court's failure to require offense-specific aggravating factors.

But even if the procedure used here was erroneous, the harmless-error standard of review would apply. *See State v. Chauvin*, 723 N.W.2d 20, 30 (Minn. 2006). Based on our review of the sentencing hearing transcript, the district court carefully sifted through the factors found by the jury and only considered those factors that made the kidnapping particularly cruel. Therefore, appellant has not shown any prejudice.

**IV.**

Appellant argues that the district court abused its discretion by imposing a double upward departure for kidnapping. The "district court may depart from the presumptive guidelines sentencing range only if 'there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grids.'" *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011) (quoting Minn. Sent. Guidelines 2.D.). "Substantial and compelling circumstances are those demonstrating that the defendant's conduct in the offense of conviction was *significantly* more or less serious than that typically involved in the commission of the crime in question." *Id.* (quotation omitted). The sentencing guidelines provide "'a nonexclusive list of factors which may be used as reasons for departure.'" *Id.* (quoting Minn. Sent. Guidelines 2.D.). One such factor is when the victim is treated with "particular cruelty." Minn. Sent. Guidelines 2.D.3.b.(2) (2013); *see also* Minn. Stat. § 244.10, subd. 5a(a) (2014) (codifying nonexclusive list of aggravating

11

factors).  "Particular cruelty involves the gratuitous infliction of pain and cruelty of a kind not usually associated with the commission of the offense in question." *Tucker*, 799 N.W.2d at 586 (quotation omitted).

"We review a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). "If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed.  But if the district court's reasons for departure are improper or inadequate, the departure will be reversed." *Edwards*, 774 N.W.2d at 601 (quotation omitted).  This court applies a de novo standard of review to the question of whether a particular reason for an upward departure is valid.  *State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008).

The jury considered and responded affirmatively to the following special interrogatories:  appellant repeatedly called K.T. offensive names; appellant demanded a timeline of when K.T. masturbated; appellant inflicted extreme physical pain, extreme emotional trauma, and extreme psychological pain on K.T.; appellant beat K.T. more than six times; and appellant delayed K.T. from getting medical treatment.  The district court considered these factual findings and concluded that appellant treated K.T. with particular cruelty by emotional humiliation, gratuitous infliction of pain, and delayed medical treatment.  The gratuitous infliction of pain, combined with a failure to render medical aid, can support an upward departure based on particular cruelty.  *Cf. Tucker*, 799 N.W.2d at 587 (listing cases in which supreme court affirmed departure based on

particular cruelty and failure to render aid).  Because the district court's reasons are valid and supported by the record, we affirm the 210-month sentence for kidnapping.

**V.**

Finally, appellant argues that the district court erred by imposing a consecutive 21-month sentence for second-degree assault.  When a district court imposes an upward durational departure and a departure as to consecutive service, severe aggravating factors must be present.  *See State v. Williams*, 608 N.W.2d 837, 840 (Minn. 2000).  "An appellate court looks to past sentences imposed on other offenders when determining the propriety of consecutive sentencing" and applies an abuse-of-discretion standard of review.  *State v. Richardson*, 670 N.W.2d 267, 284 (Minn. 2003).

Although concurrent sentencing is generally presumed when an offender is being sentenced for multiple current felonies, the guidelines identify specific situations when consecutive sentencing is "permissive."  Minn. Sent. Guidelines 2.F.2.a. (2013).  Consecutive sentences are permissive when an offender is being sentenced for kidnapping and second-degree assault because both crimes are on the list of offenses eligible for consecutive sentencing.  Minn. Sent. Guidelines 2.F.2.a.(1)(ii); 6 (listing offenses eligible for permissive consecutive sentences).  But the consecutive sentence was not permissive under the circumstances of this case because the district court imposed an upward departure for kidnapping.  According to the comments:

> [C]onsecutive sentencing is not permissive for multiple current felony convictions involving one victim and a single course of conduct if the court is giving an upward durational departure on any of the current conviction offenses.  The Commission believes that to give both an upward durational

13

> departure and a consecutive sentence when the circumstances involve one victim and a single course of conduct can result in disproportional sentencing unless additional aggravating factors exist to justify the consecutive sentence.

Minn. Sent. Guidelines cmt. 2.F.204 (2013).

The state agrees that the 21-month consecutive sentence was not permissive under the guidelines because the district court imposed an upward departure for kidnapping. Nonetheless, the state asserts that the consecutive sentence should be affirmed because the district court made statements on the record that would constitute the "severe aggravating factors" necessary to impose a consecutive sentence for the assault in addition to the upward departure for the kidnapping. But the factors that the state cites are the same factors that the district court considered when making the determination that the kidnapping was committed with particular cruelty. "For each offense, there must be substantial and compelling reasons to depart from the Minnesota Sentencing Guidelines' presumptive sentences." *Richardson*, 670 N.W.2d at 285 (reducing duration of sentences for assault to the mandatory minimum when the record reflected that the rationale for sentencing departure for kidnapping was appropriate but no separate reasons were given to justify departure for assaults). Because these factors were relied on in imposing an upward departure for kidnapping, they were not available for the district court to consider in imposing a consecutive sentence for assault.

But even if there are departure reasons available for a consecutive sentence, the record reflects that the district court considered and rejected the state's request for a triple upward departure "based on the interrogatories that the jury responded to" because the

14

court concluded the offense did not include "severe, aggravating circumstances." Because the district court already concluded that severe, aggravating factors did not exist, we reverse appellant's sentence for second-degree assault and remand to the district court to impose the presumptive guidelines sentence of 45 months in prison concurrent with the kidnapping sentence.[2]

**Affirmed in part, reversed in part, and remanded.**

---

[2] This is the presumptive sentence according to the sentencing guidelines worksheets. Appellant has a criminal-history score of 4, and the middle of the presumptive range on the sentencing-guidelines grid for second-degree assault with a criminal-history score of 4 is 45 months in prison. Although the assault will be sentenced concurrently with the kidnapping, on remand, appellant's criminal-history score is not increased for the kidnapping because the multiple current convictions are from the same course of conduct. *See* Minn. Sent. Guidelines cmt. 2B.108 (2013).